Lambert, Widow, et al. vs. Insurance Co.

## No. 12,575.

MRS. EMMA CLARA LAMBERT, WIDOW, VS. THE PENN MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, AND L'HOTE & CO.; L'HOTE & CO. VS. PENN MUTUAL LIFE INSURANCE COMPANY— CONSOLIDATED.

| 50 | 1027 |
| 52 | 1145 |
| f52 | 1146 |
| 50 | 1027 |
| 105 | 711 |
| 50 | 1027 |
| 107 | 559 |
| 50 | 1027 |
| d108 | 408 |
| 50 | 1027 |
| 109 | 365 |
| 50 | 1027 |
| 114 | 659 |

1. A policy of life insurance, taken out by a husband in favor of his wife, can not subsequently be assigned by him to her prejudice. The doctrine announced in the Pilcher case, 33 An., and the Putnam case, 42 An., sustained as the jurisprudence of the State.

2. And it makes no difference that he secured from her what purports to be an assignment, without consideration, of the policy to him before he assigned it to his creditor.

3. A donation made in the form of an onerous contract (without consideration and really intended as a donation in disguise) to have effect as such must be passed before a notary public and two witnesses.

4. An innocent stakeholder, without interest in a pending litigation, depositing in court, by consent of the judge thereof, the full amount he owes, or in his hands, and which is the object of dispute between contesting claimants, the rightfulness of whose claims is the subject of the litigation, should be relieved from further liability, and not held for interest and costs subsequently accruing.

APPEAL from the Civil District Court for the Parish of Orleans. *Théard, J.*

*Thomas J. Semmes* and *J. J. O'Connor* for Mrs. Lambert, Plaintiff and Appellant.

*Fenner, Henderson & Fenner* for L'Hote & Co., Plaintiffs, Appellees.

*Dinkelspiel & Hart* for Defendant, Appellant.

*B. B. Howard* and *H. O. Hollander* as *amicus curiæ* on Application for Rehearing.

Argued and submitted.March 22, 1898.
Opinion handed down May 2, 1898.
Rehearing refused June 29, 1898.

The opinion of the court was delivered by
BLANCHARD, J.   In January, 1891, the insurance company, defend-

ant herein, issued a policy of insurance upon the life of Louis H. Lambert for the sum of ten. thousand dollars.

By its terms this amount was made payable to said Lambert, his executors, administrators, or assigns, on the twentieth of January, 1911. But should he die before that time, then the amount was made payable to his wife, plaintiff herein, at his death.

In other words, it was a twenty-year endowment policy, of which his wife was the beneficiary in the event of his death before the lapse of the twenty years, and of which he himself was to be the beneficiary should he be alive at the maturity of the endowment.

Something over three years after the issuance of the policy an assignment thereof was made as follows: " For value received we hereby sell, assign, transfer and set over all our right, title and interest whatsoever, of, in and to twenty-payment life policy No. 69,732 on the life of Louis H. Lambert in the Penn Mutual Life Insurance Company of Philadelphia unto Louis H. Lambert."

This was signed first by the husband and then by the wife, in the presence of witnesses. As a matter of fact, Mrs. Lambert received no consideration from her husband on account of this assignment.

Three days later the husband, in similar terms, transferred all his right, title and interest in the policy to L'Hote & Co. in trust, first, to pay themselves any indebtedness he might be due them when the policy became a claim, and, second, to pay the remainder, if any, to him (the husband) or his executors, administrators, or assigns.

These assignments were, respectively, notified to the insurance company.

The policy passed into the possession of L'Hote & Co., who advanced Lambert, on the day of the assignment, six hundred dollars. Besides this he owed them a large amount.

In June, 1896, Lambert, the assured, died.

From the time they became pledgees of the policy to the death of Lambert, L'Hote & Co. paid one thousand and fifteen dollars and seventy-eight cents as premiums thereon. Including this amount, Lambert was, at his death, indebted to them in the sum of twelve thousand nine hundred and sixty-four dollars and seventeen cents.

L'Hote & Co. furnished proofs of death to the company and demanded payment of the policy. But immediately following the death of the assured, the attorneys of Mrs. Lambert had served

Lambert. Widow, et al. vs. Insurance Co.

written notice on the company that she claimed to be legal owner of the policy and demanded payment of its proceeds to her.

Under the circumstances the company declined payment to either, though admitting its liability on the policy.

Whereupon Mrs. Lambert instituted suit against the company and L'Hote & Co. She recites she was induced by her husband to assign her interest in the policy to him in order that he might transfer the same to L'Hote & Co. to secure an indebtedness he owed them; that this assignment by her was without consideration, prohibited by law, null and void; that her husband's transfer of the policy to L'Hote & Co. could and did convey no interest which she possessed in it; and that L'Hote & Co. were without legal right to claim the policy or collect its proceeds. She prayed judgment accordingly and for the amount of the policy against the company.

This was followed later by an action by L'Hote & Co. against the company. They recited the fact of the transfer of the policy to them by the assured and their possession of it, the prior renunciation or assignment of her interest in it by Mrs. Lambert to her husband, the indebtedness of the husband to them at his death, and the assurance given them, both by Lambert and the agent of the company, that the policy was the absolute property of the husband. They prayed judgment against the company for the amount of the policy.

The two suits, pending at the same time, were, by order of court, consolidated.

L'Hote & Co., for answer to the suit of Mrs. Lambert, pleaded the same state of facts set up in their own action on the policy against the company.

The latter, answering both suits, avers that it had nothing to do with the assignments which had been made of the policy beyond receiving notices thereof; that none of its agents had any authority to give the assurance, claimed by L'Hote & Co.; that the policy was the absolute property of the assured; that said assurance, if given, was without the company's knowledge or consent, and is not binding upon it, referring to a clause in the policy stipulating that: "In no case does the company guarantee the validity of an assignment."

It then, in effect, states its position to be that of stakeholder merely; admits that it owes the amount due under the policy; is ready, willing and anxious to pay the same to the party legally

entitled thereto; and that it has not been able safely to discharge the obligation because of the rival claims of contending parties.

It then, as plaintiff in reconvention by way of interpleader, recites it has been compelled to employ counsel to defend two suits in order to be protected from double liability in a matter in which it is without interest, tenders and deposits in court nine thousand seven hundred and sixty-nine dollars and eighty-six cents, the exact amount due under the policy, prays that both claimants be ordered to accept the tender, and to be discharged from the suits, leaving the matter to be settled between them, the amount thereof, deposited, to be awarded as the court may determine after due and proper hearing.

The judgment below rejected the demand of Mrs. Lambert and decreed L'Hote & Co. entitled to recover from the insurance company nine thousand seven hundred and sixty-nine dollars and eighty-six cents, with legal interest from judicial demand, and that the costs of suit be paid jointly by the company and Mrs. Lambert.

The company appeals, suggesting error to its prejudice in so far as it is condemned to pay interest and costs.

Mrs. Lambert appeals and asks reversal of the judgment rejecting her demand to be decreed entitled to the amount due on the policy.

The policy, which is the basis of both suits (consolidated), was a contract between the insurance company and the assured, out of which grew two distinct and independent obligations and two distinct and independent rights. Thus, the husband (the assured), if he lived until the year 1911, was to have the benefit of the contract; if he died before 1911, the wife was to have it. Hence, during the first twenty years of the life of the policy, the obligation of the company was to the wife and to her alone, and upon the happening of the event, which matured the policy, within that period, she being alive, no one was to be considered, or dealt with, in connection with its settlement except herself.

After the lapse of the twenty years, the husband being still alive, the wife, if living, or, if dead, her heir, ceased instantly to be the obligee and the husband became such alone and the settlement of the policy was to be made solely with him. While, therefore, both the spouses were, in a sense, during the first twenty years of the life of the contract of insurance, its beneficiaries, the degree in which they respectively held this *status* was different and their rights therein were separate and independent, the wife during that

period being the active beneficiary, the husband the passive, his rights being dependent upon his existence continuing to the end of the endowment period. So, the happening or fulfilment of the condition which developed the passive character of his relation to the policy into the active beneficiary thereof, ended the wife's connection with it as such altogether. It follows that the rights of both were conditional. Hers did not attach except upon the condition of his death before the lapse of the twenty years; his did not attach except upon the condition that he lived through the twenty years.

This would seem to demonstrate that the husband had an assignable interest in the policy independent of the wife. But he could convey or assign no greater right or interest in it than he himself possessed.

The insurer and the assured agreed that the place of contract should be the city of Philadelphia. It is so stipulated in the application for insurance annexed to the policy, which application is declared to be the basis of the contract.

They could legally so stipulate. Norton vs. Pritchard, 106 U. S. 124; Dicey Conflict of Laws, p. 567.

The court will take judicial cognizance of the fact that the common law is the basis of the jurisprudence of the State of Pennsylvania, as well as judicial notice of what the common law is. Copley vs. Sanford, Executor, 2 La. An. 335. At common law a stipulation in favor of a third person, if for his benefit, is presumed to be accepted by him. Oliver vs. Lake, 3 La. An. 78. It is familiar doctrine that in the absence of proof of the existence of a statute varying or changing a rule of the common law in comman law States, the courts will presume the rule obtains. There was no proof adduced of a contrary statute.

The wife's acceptance, therefore, of the stipulation in her favor in this policy of insurance, viz.: that it was to be paid to her in the event of the husband's death ;before the lapse of the endowment period, is presumed.

So, the question, that the stipulation in the contract in favor of a third person (the wife) was revoked before acceptance, can not arise. This might be different did the contention between the parties, that a State other than Louisiana should be the place of contract, derogate from the force and effect of any law prevailing here founded upon considerations of public order or policy. But the

acceptance of such a stipulation, presumed by the common law, may be made, under our law, either by express declaration to that effect, or impliedly by the doing of some act evidencing the intention to accept. C. C. 1890, 1902, 1810, 1811. This being so, it is difficult to see what public policy here established is sought to be avoided by giving effect to the common law doctrine of the presumption of acceptance of a benefit by a third person in whose favor made. We do not wish to be understood as deciding that under our law it is necessary for a wife to indicate her acceptance of a stipulation of insurance in her favor in order to give it validity or effect.

It is to be observed that this is not a controversy with the insurance company as to the right of the parties to recover from it. The company does not seek by the application of some law in Pennsylvania (the place of contract) to avoid a liability unquestioned under the Louisiana law. On the contrary, it admits its liability, and its only concern in the case is to protect itself from double liability. The controversy is between two parties of the same domicile (Louisiana) who claim the money which the company is willing to pay to the proper person; and as both base their claim on the policy, and this policy makes Pennsylvania the place of contract, it would seem that neither is in a position to dispute the applicability of the law prevailing there so far as the same may properly be recognized as affecting the matters at issue in these suits.

The contention of Mrs. Lambert is that being the beneficiary of the policy in the event of the death of her husband within the endowment period, and that event having happened, she alone is entitled to the money. Confronted by her act assigning all her right, title and interest in the policy to her husband, who, in turn, assigned it to another, she replies (1) that the assignment of the policy was in itself a contract, separate and distinct from the policy of insurance, was made in Louisiana, by parties in Louisiana, and is to be governed by the law of Louisiana; (2) that such a contract, being not one of those which the law of this State permits husbands and wives to make between themselves (C. C. 1790, 2446), or permits the wife to make with another so as to bind herself for her husband's debts or those of the community (C. C. 2398), is without effect and void; (3) that if the assignment by her, being without consideration, is classed in the category of donations, it is void because not evidenced by an authentic act.

The contention of L'Hote & Co. is that, for a good and valid con-sideration, the policy was duly and regularly assigned and delivered by the husband to them; that the wife at that time had no interest in the policy,having legally parted with all her right, title and interest therein previously to her husband.

Confronted with the plea that the wife could not by contract or convention with her husband part with her right and interest in the policy, they reply that the stipulation in a contract of life insurance between the assured and the insurer in favor of a third person, not a party to the contract, as beneficiary, is a stipulation *pour autrui*, and as between the assured and the beneficiary is a pure gratuity, a donation, governed by all the laws regulating donations, except those relating to form; that when such beneficiary is the wife of the assured, the stipulation in her favor falls within the letter and spirit of the rule announced in C. C. 1749 and is revocable by the husband at will; that this revocation may be either express or tacit, and is effectively accomplished by any conduct of the husband which implies an intention to revoke, and the conduct of the husband in this case clearly evidences such an intention; and that the rule of law embodied in C. C. 1749 is one founded upon considerations of public policy and for the preservation of public order, from the force of which parties can not by their conventions derogate.

With great research and ability counsel for L'Hote & Co. support these propositions, citing the decisions of the French courts and quoting the opinions of the learned jurists of France whose com-mentaries upon the Code Napoleon have assisted so greatly in moulding our own jurisprudence. It must be conceded that the French authorities are full and clear on the point that all donations between the spouses are revocable at the will of the donor, that this rule of law is founded upon considerations of public order and policy, and that a life policy of insurance in favor of a wife as the beneficiary thereof is a gift, a donation, in this sense, revocable at will by the husband, applying to the same the provisions of Art. 1096 of the Code Napoleon, from which the corresponding article of our Civil Code, 1749, is taken—being a literal reproduction of the former.

If the question were a new one before our courts there would seem to be no great difficulty in following this enlightened lead.

But in two cases, in comparatively recent years, where the wife's rights in an insurance policy as against the husband's attempted

assignment of the same to his creditors, underwent a careful consideration, a different rule was established which we feel called upon to sustain.

We refer to Pilcher vs. Ins. Co., 33 La. An. 322, decided in 1881, and Putnam vs. Ins. Co., 42 La. An. 740, decided in 1890.

In both those cases, while it was not disputed that the taking out of the insurance by the husband on his life in favor of the wife was a gift, a gratuity, a donation to her, his power, right or authority afterward to assign or dispose of the policy for his own benefit is denied, and her right and interest in the policy is referred to as her separate property not disposable by the husband.

Indeed, strong and emphatic language is used, the court, in the first named case at page 331, saying: " We hold that the right of the beneficiary wife in the policy could only be terminated by its lapse;" and in the latter case using this language, quoted from the *syllabus*: " A life insurance policy in which a married woman is named as beneficiary vests a complete title in her as separate, paraphernal property, which can not be pledged as security for the debts of her husband or of the community."

When these decisions were rendered, C. C. 1749, relied on now by the opposition as defeating the rights of this wife, stood as it stands now. There has been no change of the law in this respect. Counsel for L'Hote & Co. say in their brief, in respect to the two cases referred to: " The court in those cases  *  *  *  simply overlooked a plain and unambiguous provision of the Code," meaning Art. 1749. It is then said that those decisions make no reference to the said articles, or to the authorities thereunder. Continuing they say: " This defence was not made," and assert that if it had been there can be little doubt it would have been sustained. Again: " The defendants in those cases had a right to waive these defences, and if they chose to do so, the court was not bound to apply them. The only point presented for determination in those cases was whether such contract of insurance gave the wife a vested interest before the death of her husband. The court decided  *  *  *  that it did; that the contract constituted a valid gift to the wife. If anybody had then called attention to the fact that under our law every gift from husband to wife during marriage is revocable at will by the husband, we submit there would have been a different solution of the cases."

These observations of counsel caused a reference to the briefs filed on behalf of the insurance company in the two cases cited.

We fortunately found the brief in the Pilcher case, and its perusal shows counsel to be in error. The point was there distinctly and broadly made that constituting the wife the beneficiary of the policy was a stipulation *pour autrui*, which may be revoked at any time before acceptance, and various authorities were cited in support thereof, including C. C. 1749; Merlin, Questions de Droit, Vol. 6, p. 30, *verbo* Stipulation *pour autrui*; Code Napoleon Annoté Sirey et Gilbert, and others.

So this defence *was* urged in the two cases, but unsuccessfully.

We have already shown that by the common law of Pennsylvania, made the place of contract by the contracting parties, the acceptance by the wife of the benefit stipulated in her favor is presumed.

But if act of hers signifying acceptance were needed, it can be found in the attempted assignment of the policy to her husband. How could she assign if there were no acceptance, no right vested in her which had become assignable? That act of assignment can well be given effect to as evidencing an acceptance of the stipulation made in her behalf in the policy, while, at the same time, it is without effect and void as a transfer or conveyance of her rights.

It was not one of the contracts which our law permits husbands and wives to covenant between themselves, nor allows the wife to make so as to bind herself or her property for her husband's debts or those of the community. C. C. 1790, 2398, 2446. It was the case of a husband prevailing upon his wife to transfer her property to him without consideration, in order that he might pledge it to his creditor as security for debt. This is in the teeth of a prohibitory law and is null. Nor could the consent of the wife to the arrangement infuse validity or legality into it.

The creditor or pledgee, in this instance, is charged with direct notice of the wife's rights, for the policy shows on its face that she was its beneficiary if the husband died before the endowment period had matured.

Nor can we assent to the proposition that the assignment of the policy by Mrs. Lambert to her husband is valid as a donation, as contended for it on the authority of C. C. 1746. It is quite true that under that article one of the spouses may during marriage give to the other whatever he or she might give to a stranger. But this must be done pursuant to the directions of the law relative to donations. C. C. 1536. The donation of incorporeal things, such as

credits, rights or actions, must be by public authentic act. This assignment was not such act. It is sought to overcome this difficulty, however, by the contention that the assignment is made in the form of a sale by private act, and though not a sale because without consideration, it is yet good, in this form of an onerous contract, as a donation, although not clothed with the formalities requisite for the validity of a donation. Several old decisions (5 M. 693; 2 La. 215) are cited as sustaining this view. These cases were decided under the Code of 1808, whose Art. 53 provided that, "all acts *containing* donations must be passed before a notary and two witnesses," etc. An essential difference, both in language and effect, will be noted between that article of the Code of 1808 and Art. 1523 of the Code of 1825, now Art. 1536 of the Revised Code, in respect to the form of donations.

The donation in the 2 La. case, p. 215 (Trahan vs. McManus), was upheld because it did not profess on its face to be a donation, though it was in reality one in the guise of an onerous contract under private signature.

As it was not an act by its terms containing a donation, it was held not to contravene the provisions of Art. 53 of the then Code. But this article was changed in the Code of 1825 so as to make the law declare that "an act shall be passed before a notary and two witnesses of every donation," etc.

The 2 La. case, therefore, is not an authority under the altered conditions. This was pointed out in Brittain vs. Richardson, 3 R. 81, where it was declared that all donations *inter vivos* must be passed before a notary and two witnesses. See also 10 La. 90; 7 N. S. 424; 1 La. An. 237; 2 La. An. 766; 15 La. An. 491; Farrar vs. Michaud, 22 La. An. 358.

The conclusion we announce on this subject is that a donation made in the form of an onerous contract—that is to say, an onerous contract which is not such because without consideration and really intended as a donation in disguise—to have effect as a donation must be passed before a notary public and two witnesses.

The judgment below which awards the proceeds of this life policy to L'Hote & Co. must be reversed.

But since they paid as premiums on the policy the sum of one thousand and fifteen dollars and seventy-eight cents, they should recover that amount out of its proceeds, with legal interest from

July 6, 1896, the date of filing of first suit on the policy. While the sum so paid may rightly be considered as advances made to the husband and charged on his account current, it enured directly to the benefit of the policy and the rightful beneficiary thereof, and it would be inequitable not to permit them to recover it from the proceeds of the policy.

With regard to the appeal by the insurance company we do not think it should be required to pay interest after the date of its second deposit of funds in court, June 18, 1897. The deposit first made, February 2, 1897, was insufficient, in that it did not include interest and costs to that date. This was later corrected, but not until after judgment had been rendered by the court *a qua* and this appeal taken. We believe it a just principle to announce that an innocent stakeholder, without interest in a pending litigation, depositing in court the full amount he owes, or in his hands, and which is the object of dispute between contesting claimants, the rightfulness of whose claims is the subject of the litigation, should be relieved of further liability, and not held for interest and costs subsequently accruing.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from, rejecting the demand of Mrs. Emma Clara Lambert, widow, and decreeing L'Hote & Co. entitled to recover from the Penn Mutual Insurance Company of Pennsylvania the sum of nine thousand seven hundred and sixty-nine dollars and eighty-six cents, with legal interest from November 27, 1896, until paid, be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered in the first instance, it is ordered and decreed that the said insurance company owed on the policy of insurance declared on in these consolidated suits the sum of nine thousand seven hundred and sixty-nine dollars and eighty-six cents, with legal interest thereon from July 6, 1896, until June 18, 1897, and, in addition, a sum sufficient to pay the costs incurred in the suit entitled Mrs. Emma Clara Lambert vs. The Penn Mutual Life Insurance Company and L'Hote & Co., up to and inclusive of June 18, 1897.

It is further ordered, etc., that the sum of nine thousand seven hundred and sixty-nine dollars and eighty-six cents deposited in court by said insurance company on February 2, 1897, and the further sum of three hundred and twelve dollars and sixty cents, depos-

ited June 18, 1897, be accepted as an acquittance of said obligation on the part of said insurance company.

It is further ordered, etc., that Mrs. Emma Clara Lambert, widow, do have and recover from said sums so deposited as aforesaid, the sum of eight thousand seven hundred and fifty-four dollars and eight cents, with legal interest thereon from July 6, 1896, until June 18, 1897.

It is further ordered, etc., that L'Hote & Co. do have and recover from said amounts so deposited as aforesaid, the sum of one thousand and fifteen dollars and seventy-eight cents, with legal interest thereon from July 6, 1896, until June 18, 1897.

It is further ordered, etc., that all costs in suit numbered 50,270 on the docket of the lower court up to and inclusive of June 18, 1897, be paid out of the funds deposited in court by the said insurance company, any shortage thereof, on interest and costs, to be made up by said company; and that all costs incurred in suit numbered 51,597 on the docket of the lower court, as well as the costs of this appeal, be taxed against L'Hote & Co.

[The Chief Justice concurs in the order refusing the rehearing. BREAUX, J., and BLANCHARD, J., dissent, and think a rehearing should be granted.]

### CONCURRING OPINION.

WATKINS, J.  In my opinion the judgment appealed from should be reversed, because it has been settled by repeated decisions of this court that a policy of life insurance which is taken on the life of a husband, payable to his wife as the beneficiary, becomes *eo instanti* the separate paraphernal property of the wife under her administration and control and which can not be surrendered or assigned by the husband.

But in the course of none of its decisions has this court held that such a policy passed a title to the wife by donation *inter vivos*, notwithstanding that it has held that it was in a certain sense a gratuity. The court has had no occasion to decide the character of her title; and, indeed, it is necessarily innominate.

The policy is only payable upon the happening of the death of the insured, and is specially conditioned upon the premiums being regularly paid.  It must be conceded that the wife has an insurable interest in the life of her husband, and it has been held to be immaterial by whom premiums are paid.

Thus circumstanced, the policy of insurance possesses no element of a donation *inter vivos*, neither in form nor essence.

A life insurance policy made payable to wife, or wife and children as beneficiary, or beneficiaries, is separate property of the beneficiary and beyond the control of the husband. Pilcher vs. New York Life Ins. Co., 38 An. at p 324 (at bottom); citing Succession of Kugler, 23 An. 455; Succession of Hearing, 26 An. 326; Succession of Clark, 27 An. 269; Succession of Bofenschen, 29 An. 714, p. 325 (at top and in centre of the page).

In opinion on rehearing by Judge Fenner (pp. 330, 331) is found the following expression, viz.:

" The gift to her had been fully executed and the resultant interest was *her separate and indefeasible property*." (My italics.)

Again:

" If such an assignment had been made it would have been illegal, null and void, and would not have divested Mrs. Pilcher's interest in the policy, which would have continued unimpaired as long as the policy," etc.

(P. 331) " If, as held in Louisiana, in repeated decisions, the insurance by the husband for the benefit of his wife, is such a valid gratuity in her favor as to make her right under the policy at his death her absolute and separate estate, the like effect logically attaches *pro tanto* to the valuable interest under the policy," etc.

In Putnam vs. Insurance Company, 42 An. 739, under circumstances quite similiar to those stated in the *Pilcher* case, we said:

" In law this policy "—the one in which Mary S. Putnam was named as the beneficiary—" inured to her separate, paraphernal benefit; though not separate in property from husband, the insured, and its character of paraphernal property could not be changed to that of separate property of the husband, nor that of the community without her consent, lawfully obtained. As such it could not be placed as security for the husband's debts. To this effect are many authorities"—citing the *Pilcher* case and the decisions therein cited.

In addition thereto, the opinion cites the following cases, viz.:

Lemon vs. Life Insurance Co., 38 Conn. 294; Barey vs. Bruno, 71 N. Y. 62; Barey vs. Life Insurance Company, 59 N. Y. 587; Dalton vs. Willner, 52 N. Y. 312; Burroughs vs. Life Insurance Co., 97 Mass. 359; Knickerbocker Life Insurance Co. vs. Wiltz, 99 Mass. 159; Life Insurance Co. vs. Burroughs, 34 Conn. 305; Chopin vs. Fellows, 36 Conn. 132; Bliss on Life Insurance, Sec. 348.

In Stuart vs. Sutcliffe, 46 An. 240, the life insurance policy was made payable to the assured, his executors, administrators or assigns, and same was *during the life* of Wm. Stuart, who bought the policy, assigned to John Klien as collateral security for debt; but while recognizing the validity of that assignment, we drew a distinction between that character of policy and one made payable to the wife, or wife and children of the assured. We quoted with approval the following extract from the ·*Hearing* case, viz.:

"If the policy issues to the wife the amount stipulated belongs to her when the event insured against happens, and she can not be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed."

Succession of Hearing, 26 An. 326. The opinion then quotes and affirms the *Putnam* and *Pilcher* cases in terms.

In Tutorship of Crane, 47 An. 896, we said:

"It has been settled by repeated decisions of this court that money which is collected after death of the husband or the father, upon a policy of life insurance made payable to his wife and children, is not an asset of the matrimonial community, but of their *separate* estate," citing with approval all of the foregoing authorities.

In each of the four cases cited the same principles of law were announced, and have been steadily maintained, and of their absolute correctness, in my opinion, there can be no doubt.

But if their correctness be doubtful, the rule of *stare decisis* should be maintained, and the rights of the wife and children protected against the creditors of impecunious fathers and husbands.

For these additional reasons I concur in the opinion of the majority.