Ludeling, C. J.
(dissenting), said;
“In regard to the policies in favor of the wife and the one transferred to her, I have no doubt they belong to the succession, having constituted a part of the community of acquSts and gains existing between her and her husband at the time the policies were acquired. The rights were acquired by Hearing, he paying the premium ; they belonged, therefore, to the community, although acquired in the name of the wife alone. * * * In regard to the policies in favor of the child, I have more difficulty in coming to a conclusion. I am inclined to the opinion, however, that Mr. Hearing could not make those stipulations pour autrui, as to a child or strangers, unless, at the time he made the contracts of assurance, his affairs were in such a condition that he could have made valid donations of his property to the value of the premiums paid.”
In Succession of George and Frances Clark, 27 La. Ann. 269 (1875), it appeared that the decedents (husband and wife) died on the same day, the death of the wife following that of the husband; that there were inventoried, in the succession of the wife, as her separate property, the proceeds of a policy of insurance which had been issued upon the life of her husband for her benefit; and that a creditor of the community, which was insolvent, asserted his claim to be paid from said proceeds, on the ground that they belonged to the community. It was said by the court (with no dissent from the Chief Justice);
“It is very clear that the assets shown as composing the separate succession of Mrs. Clark are-her separate property. They are made up of only two items, viz.: $103.50, value of a few articles of jewelry and silverware, and $5,715 in cash, received from the Knickerbocker Life-Insurance Company on a life insurance policy on the life of her husband, taken out for her benefit. The opponent cannot claim payment out of these assets for his debt, which is a community debt, owing by the community estate.”'
In Succession of Bofensehen, 29 La. Ann. 711 (1877), it was said:
“The deceased had insured his life for $4,000 in favor of his wife and children. The widow collected^ the amount of the policy and did not include it among the effects of the succession when she filed her account. The opponents allege that the sum thus received by her belonged to the succession — that the premiums paid by the husband on the policy were from the community fund, and the amount of the policy, when collected, must belong to the same fund — that the husband cannot transfer or donate to the wife community property, to the prejudice of the creditors of the community, and, if she acquired it by the stipulation pour autrui, it is null, because forbidden. The point has been twice before this court. In Hearing’s Case, 26 La. Ann. 326, there was an alleged separation of property, but in that of Clark, 27 La. Ann-269, as in this, there was a community of acquets. * * * The objections made by the opponents in the present case are the same as those considered in those cases, and pronounced untenable. The policy on the decedent’s life issued to his wife for the benefit of herself and children. The premiums were paid by the husband out of community funds, over which he had control as head and master thereof. The most that could be claimed would be the reimbursement of the premiums to the community; but we do think that claim well founded.”
In Pilcher v. New York Life Ins. Co., 33 La. Ann. 322 (1881), it appeared that a policy of insurance bad issued in favor of the plaintiff on the life of her husband, and that 17 years afterwards, by agreement between him and the insurance company, the policy was allowed to lapse for nonpayment of premium, and another policy was issued in its stead, payable to the heirs or assigns of the assured, and by him assigned for the purposes of bis business. The court held *58 that (quoting from the syllabus of the opinion) :
“A policy of insurance, taken on the life of the husband in favor of the wife, vests the latter with a right which the former cannot destroy or control without her consent; such a policy belongs to the wife exclusively, and not -to the community of aequéts and gains.”
In the course of the opinion the court said:
“We think that the right to the policy vested in Mrs. Pilcher, the wife and beneficiary, and she could not be devested of that right, without her consent, by her husband, or the insurer, except by failure to comply with the requirements of the policy. We are of opinion, also, that the husband had not the right to dispose of the policy, and that it could not be regarded as a community asset. This court has, in repeated decisions, held these views [and, after referring to the cases above cited,- the opinion proceeds]. These decisions considered together, we think, effectually dispose of the question as to the right of the husband to the control of the policy as community property. If, on the death of the husband, it could not enter into the community, but should be treated as the separate and exclusive property of the wife and children, its character must have been the same during his lifetime.”
In the opinion on the application for rehearing, it was saicl:
“Our convictions remain unshaken as to the correctness of all the propositions on which our original opinion rests. (1) Mrs. Pilcher had such vested interest in the policy, as the beneficiary thereof, as disabled her husband from assigning or disposing of it without her consent.
“To the extent of the premiums which had been paid by Pilcher for her benefit, and the valuable interest in the policy resulting therefrom, the gift to her had been fully executed, and the resultant interest was her separate and indefeasible property. The additional right was vested in her to continue the policy in force by paying future premiums if her husband failed or refused to do so. * * *
“If, as held in Louisiana in repeated decisions, the insurance by the husband for the benefit of the wife is such a valid gratuity in her favor as to make her right under the policy, at his death, her absolute and separate estate, the like effect logically attaches pro tanto to the valuable interest, under the policy, created by the payments of premiums for her benefit, as the same are made; and this interest becomes likewise her separate property, not disposable by her husband.”
In the very similar case of Putnam v. New York Life Ins. Co., 42 La. Ann. 741, 7 South. 602, in which a policy, issued in favor of the wife, upon the life of the husband, had been canceled, and another policy, with another beneficiary, issued in its stead, by virtue of an agreement between the husband and the company, the court (referring to the wife) said:
“As to her, the company’s contract was complete in its ineipiency and never changed thereafter with her consent. In law, this policy inured to her separate, paraphernal benefit, though not separate in property from her husband, and its character of paraphernal property could not be changed to that of separate property of the husband, or that of the community, without her consent lawfully obtained.”
All of the eases thus cited had been decided, and the doctrine enunciated and affirmed by them — that a policy of insurance, issued at the instance of the husband, upon his own life, in favor of his wife, inures to her separate benefit from the date o'f its issuance, and that the interest so acquired by the wife is not then or thereafter affected by the fact that the premiums are paid by the husband from the funds of the community — -had become part of the settled jurisprudence of the state, and, as such, a rule of property and of civil rights, before the issuance (in June, 1890) of the policy here in question; and that doctrine has since been reaffirmed in the following cases (and probably others), to wit: Succession of Brownlee, 44 La. Ann. 917, 11 South. 590; Tutorship of Crane, 47 La. Ann. 896, 17 South. 431; Lambert v. Insurance Co., 50 La. Ann. 1027, 24 South. 16; Kelly v. Kelly, 131 La. 1024, 60 South. 671.
The learned counsel for the appellees argue, however, that the policy in question “has two features, one an insurance feature, and one an investment feature”; and they say:
“As to the insurance feature, if, at any time during the life of the policy, Mr. Desforges had died, the company would have been liable to Mrs. Desforges for the full face value of the policy of insurance. Under these circumstances, she would have collected the insurance, as insurance, as a death claim, and, under the jurisprudence of this state, that insurance, being payable to her, would have become her separate, *60 paraphernal property, and would not have fallen into the community. But that did not take place, because Mr. Desforges lived to collect the cash surrender value of this policy at the end of 15 years, not as insurance, but as an investment. Under these circumstances, the fact that the policy was not in force after 1905, the fact that the premiums paid by him during those 15 years amounted to $2,568, which payments created the investment that realized the cash surrender value, and that, for the $2,568 paid into the company, Mr. Desforges elected to collect at that time the sum of $2,101.35, makes the transaction an investment, and not an insurance. * * * If Mr. Desforges, instead of paying the sum of $2,568 to the Manhattan Life Insurance Company, had put this same sum of money into a savings bank or homestead association, or any other institution which would conserve his capital and pay him interest, he would have accumulated, at. the end of 15 years, a sum considerably in excess of the sum of $2,101.35. 1-Ie did not see fit to do so. He saw fit to combine insurance with investment, and took out a policy which would be, not only an investment, but also insurance to Mrs. Desforges during the life of the policy; or, to put it differently, procured, not only insurance to Mrs. Desforges, but an investment for himself. The insurance company, at the end of 15 years, paid him the sum of $2,101.35, which represented the amount of money he had saved, according to their methods of calculation, and, out of precaution, it paid the same by check to the joint order of Mr. and Mrs. Desforges. This money had been accumulated during the existence and régime of the community, was paid for by the community, and was used for the benefit of the community.”
The counsel refer us to several cases in which the distinction drawn by them is recognized. Talcott v. Field, 34 Neb. 611, 52 N. W. 400, 33 Am. St. Rep. 662; Tennes v. N. W. Mut. Life Ins. Co., 26 Minn. 271, 3 N. W. 346; Walker v. Giddings, 103 Mich. 344, 61 N. W. 512. We find it impossible, however, to reconcile, with the jurisprudence to which we have referred, the proposition that Mrs. Desforges was anything less than the sole beneficiary of the contract represented by the policy in which she is so designated, or to find sufficient reason for holding that, under that jurisprudence, her husband could any more have devested her, as such beneficiary, of the right to the surrender value of the policy, whether at the expiration of the 15-year term or at any time anterior thereto, than he could have devested her of the right to collect the proceeds of the policy, in the event of his death within the 15-year period, or after its expiration, if the policy had not been surrendered. The original question for decision was whether, under our law, a man could insure his life for the benefit of his wife, which question necessarily included the other question whether, in the event of his effecting such insurance, it could be held that it inured to the benefit of the wife, and did not become an asset of the community. The difficulty which those questions presented arose from the fact that much of our law was originally enacted at a time when the beneficent operation of life insurance was, comparatively speaking, unknown, and it cannot be said to have been definitely determined, even at this time, whether such a contract as is here considered is to be given a name, since it is sometimes referred to as a donation, sometimes as a stipulation pour autrui, and in one instance as innominate. Thus, in the Pilcher Case, Justice Fenner, speaking for the court, upon the application for rehearing, said (as we have seen):
“To the extent of the premiums which had been paid by Pilcher for her [his wife’s] benefit, and of the valuable interest in the policy resulting therefrom, the gift to her had been fully executed, and the resultant interest was her separate and indefeasible property.”
In Succession of Brownlee, 44 La. Ann. 921, 11 South. 592, Nicholls, C. J., as the organ of the court, said:
“Whether Mrs. Brownlee may be considered as having received the amount of the policies under donations from her husband, or through the operation of a stipulation pour autrui, created in her behalf by her husband, in the contracts between himself and the insurance companies, the fact remains, beyond dispute, both under the decisions of the courts and the admissions of opponents, that she rightfully and legally received the same.”
In Lambert v. Insurance Co., 50 La. Ann. 1038, 24 South. 21, Mr. Justice Watkins, concurring said:
*62 “In my opinion the judgment appealed from should be reversed, because it has been settled by repeated decisions of this court that a policy of life insurance which is taken out on the life of a husband, payable to his wife as the beneficiary, becomes, eo instanti, the separate, paraphernal property of the wife, under her administration and control, and cannot be surrendered or assigned by the husband. But in the course ot none of its decisions has this court held that such a policy passed a title to the wife by donation inter vivos, notwithstanding that it was held that it was, in a certain sense, a gratuity. The court has had no occasion to decide the character of her title, and, indeed, it is necessarily innominate.”
In N. Y. Life Ins. Co. v. Neal, 114 La. 652, 38 South. 485, a case in which the beneficiary was held to be incapable of receiving, by donation, an amount exceeding in value one-tenth of the movable estate of the assured, Breaux, C. J., as the organ of the court, said:
“Practically there is no difference between a donation, a gratuitous stipulation pour autrui, and gratuitous insurance.”
It will he observed, however, that whatever uncertainty there may have been as to the classification of the contract whereby a wife, named as the beneficiary, acquires her interest, as such, in a policy of insurance issued on the life of her husband, it is settled, beyond doubt, and was settled when the policy here in question was taken out, that there is nothing in our law which invalidates such a contract, or which denies to the beneficiary the rights and advantages intended by it; and the decisions to that effect are predicated, as we take it, in part upon certain general principles, and in part upon express provisions of the law. Thus: It is the legal, as well as the moral, duty of the husband to provide for the wife, and there is vested in the wife the correlative right to accept such provision. If the tangible property or the incorporeal rights of the wife are placed in the keeifing of the husband, it is made his duty to care and account for the same, and the wife is the one creditor whom, under the law, he may prefer.
“Husband and wife are each presumed to have such a pecuniary interest .in the continuance of the life of the other as will support a policy of insurance on such life.” 25 Cyc. 705.
One of the rights of the wife is therefore to insure the life of the husband; but, since he is the head and master of the community, and controls its funds, her enjoyment of that right must depend upon his volition. To say, however, that any and all efforts by the husband to secure to the wife the enjoyment of such right must necessarily inure to the benefit of the community, and of the creditors and others who may be interested in it, is to say, in effect, that though the right may exist, the law of Louisiana does not permit the wife to exercise or enjoy it. The law of Louisiana, however, permits the husband to donate to his wife all that he could give to a stranger, which, in this instance, would have been one-third of his estate, and neither the premiums, as paid by the decedent, nor the proceeds of the policy upon which they were paid amounted to one-third of his estate. If, however, it be said that such a donation must be made by notarial act, it may be answered that a” stipulation pour autrui, though gratuitous, and therefore in effect a donation, is not required to be evidenced by notarial act. C. C. arts. 1890, 1902; C. P. art. 35. And finally, if it can be said that the stipulation pour autrui, as provided for in the Civil Code, has no application to the case of a man who insures his life for the benefit of his wife, the answer would seem to be that the failure of the law to provide for a particular feature in civilized life, which has developed since the law was originally enacted, does not imply that individuals may not acquire rights with respect thereto which may be enforced by the courts. Returning, however, to what counsel for the appellees term the investment feature of the contract under consideration, we find that the weight of authority seems to sustain the proposition that:
“Insurance is none the less life insurance because it is not for the full term of the life of the insured, but for a term of years only, or *64 until he shall arrive at a certain age.” 25 Cyc. 699.
And we can see no reason why, if one may lawfully stipulate, in a policy of insurance taken out for the benefit of his wife, that the amount called for shall be paid to her, at his death, he may not as well stipulate that the payment shall be made at the expiration of a certain period, whether he be dead or alive. Of course, if he be dead, he can no longer maintain his wife, and an ordinary life policy is intended as a provision against that contingency. But he may, before his death, become helpless and unable to maintain either his wife or himself, and an endowment policy is intended in a measure to provide, also, against that contingency. If, by the terms of ’a particular policy, the amount called for is payable, in the event of death, within a given period, to a named beneficiary, but, in ease of the survival of the assured, is to be paid to him or to some one else, at the expiration of the period named, we know of no reason why the contract should not be enforced as written. But, as we understand the evidence in this case, the policy here in ^question (which is not in the transcript) names no other beneficiary than Mrs. Desforges. We are therefore, and for the reasons stated, of opinion that she alone is entitled to the proceeds.
The opponents, Lester Desforges (now of full age) and the minor, Alma Desforges, allege, in their opposition: i
“That they are entitled to an undivided one-sixth of the estate of Leonce Desforges, taking it by representation through their deceased father, Charles Desforges, as will more fully appear by the original petition herein filed by them.”
We are of opinion that the allegation that opponents came in by representation of their father is well founded, since a grandchild inherits in his own right only when he is nearest in degree, or with respect to gifts or legacies made by his grandfather during the life of his father; and it follows that collation may be demanded of opponents under C. C. art. 1240, which declares that:
“If the grandchild comes in only by right of representation, he must collate what had been given to his father, even though he should have renounced his inheritance.”
[2] It is said that the amounts advanced to Charles Desforges by his father were not gifts, but that they constituted debts as against Charles Desforges, and that debts are not subject to collation. Our conclusion from the evidence is that the advances were made with the intention that, in the event of their not being reimbursed, they should be charged against the inheritance of Charles Desforges, or as having been made en avancement d’hoirie. They are therefore to be collated. It is also said that the judgment requiring the collation should, in any case, be reduced to the amount that the opponents would otherwise have received from the succession; but, as we interpret the judgment, it requires no amendment, as it goes no farther than to deny to the opponent the right to share in the partition.
It is therefore ordered, adjudged, and decreed: That the judgment appealed from be reversed in so far as it rejects, in toto, the item, in the projet of partition, reading:
“B. Proceeds of policy of insurance No. 69153, Manhattan Life Insurance Co. the sum •of $2,500,” etc.
That the amount thus stated be reduced to $2,101.35, and that, as to said last-mentioned amount, all oppositions be dismissed. It is further decreed that, in all other respects, said judgment be affirmed; the cost of the appeal to be paid by the mass.
PROVO STY, J., takes no part, not having heard the -argument. O’NIELL, J., takes no part.