173 So. 126

## BERRY v. FRANKLIN STATE BANK & TRUST CO.

No. 33599.

Feb. 1, 1937.

Rehearing Denied March 1, 1937.

G. Allen Kimball, of Monroe, C. W. Berry, Jr., of Winnsboro, and Sholars & Gunby, of Monroe, for appellant.

Thompson & Thompson, of Monroe, for appellee.

ODOM, Justice.

Margaret Adams and T. V. Berry were married in Franklin parish, this state, under the community regime, on September 10, 1911, and lived together until June 7, 1928, when the marriage and the community were dissolved by divorce. No children were born of the marriage. A considerable amount of property, both real and personal, was accumulated during the marriage, all standing in the name of the husband at the time the marriage was dissolved.

After the marriage and prior to its dissolution the husband had his life insured under six separate policies aggregating $12,500. Under some of these policies the wife was originally made the beneficiary. Some of them were changed during the marriage so as to make her the beneficiary. But in 1926, prior to the dissolution of the marriage, the insured had the beneficiary in all the policies changed, making the proceeds or avails payable to his executors or administrators.

Some two or three days after the marriage was dissolved by divorce on June 7, 1928, Mrs. Berry and her former husband entered into a contract purporting to be a complete settlement of the community. Under this contract, which was notarial in form and signed by the parties, Mrs. Berry sold and delivered to her former husband her undivided community interest in all of the real estate standing in the name of her husband at the time the marriage was dissolved. Numerous parcels of real estate are specifically described in the contract, and in addition to these descriptions it is recited that Mrs. Berry "does hereby and by this act grant, bargain, sell and convey all of her entire interest in and to any and all property standing of record in the name of T. V. Berry, or in which the said T. V. Berry has an interest, whether the same be described herein or not, she hereby waiving and renouncing and relinquishing to and in favor of the said T. V. Berry, any interest in any property owned by the said T. V. Berry and belonging to the said

community, it being her intention and she does hereby and by this act renounce said community and disclaim any interest in any of the assets of the said community."

The consideration for this sale and renunciation is as follows:

"The assumpsit and agreement on the part of the said T. V. Berry to assume and pay all of the outstanding community obligations which the said appearer declared amounts to more than the value of the property herein conveyed."

T. V. Berry died intestate and without issue on December 18, 1933, leaving as heirs his mother, brothers, and sisters. The Franklin State Bank & Trust Company of Winnsboro, La., was appointed administrator of his succession.

The administrator collected from the insurance companies under the life insurance policies above described the net sum of $9,136.44, which amount it credited to the separate estate of the deceased.

The present suit was brought by Mrs. Berry against the administrator for the purpose of having it decreed: First, that the entire amount of the proceeds of the insurance policies belonged to her, and in the alternative, if it should be held that she was not entitled to the entire amount of the proceeds, that one-half thereof should be paid to her; and, second, that the contract which she entered into with T. V. Berry, purporting to be a complete settlement of the community affairs between her and T. V. Berry, is null and void, and that she is the owner of an undivided one-half interest in all the property standing in the name of the said T. V. Berry at the time the marriage was dissolved.

The administrator filed answer in which it denied the plaintiff's right to any portion of the proceeds of the said life insurance policies, and further denied plaintiff's right to have the aforementioned contract and settlement set aside.

There was judgment in the lower court decreeing that the plaintiff was entitled to one-half the net proceeds of the said policies and rejecting her demands on the other issues. From that judgment the administrator appealed, and in this court plaintiff has answered the appeal, praying that the judgment be so amended as to award her the entire amount of the proceeds of the life insurance policies collected by the administrator, and in the alternative, for judgment for one-half thereof, and holding the contract of settlement to be null, void, and of no effect.

Prior to filing answer, the administrator filed an exception of no cause or right of action, an exception of nonjoinder, and a plea of vagueness. It also pleaded the prescription of five years against plaintiff's demand to set aside the contract of settlement. The plea of prescription was referred to the merits and in effect finally overruled by the court. All the exceptions were overruled.

This litigation presents two major issues for consideration. The first is whether the contract entered into between Mrs. Berry, the plaintiff, and T. V. Berry after their marriage was dissolved by divorce, purporting to be a full and complete settlement of the community affairs, is null and

void and should now be set aside. The second is whether Mrs. Berry is entitled to all or any part of the proceeds of the life insurance policies. We shall dispose of these issues in the order stated.

The grounds on which Mrs. Berry attacks the contract of settlement are that her former husband through misrepresentation and fraud induced her to sign it; that she signed it through error both of law and of fact. She alleged and testified as a witness that from the date of her marriage to T. V. Berry in 1911 to 1928, when she sued him for divorce on statutory grounds, at his request, she devoted her entire time and attention to household affairs; that her husband was a practicing attorney and that she knew in a general way that he was successful both as an attorney and as a business man; that she knew that he was accumulating property, but as to how much or its value she knew little; that she never knew whether he was paying cash for the property which he purchased or whether he was contracting debts. In sum, she testified that she considered it her duty to keep the home and make her husband comfortable and that all her energies and thoughts were centered upon that. As to outside affairs she says she left those to her husband, in whom she had utmost confidence.

She alleged and testified that after the divorce was granted Mr. Berry prepared and presented to her the document which she signed, stating to her at the time that the debts which he owed amounted to as much or more than the community property was worth; that he was practically insolvent; that her equity in the community amounted to nothing. She says she believed what he said, as she always had; that she had no definite knowledge of the community affairs and knew that Mr. Berry did. She alleged and testified that she signed the document without investigation and without advice of counsel and that if she had known the facts she would not have signed it.

The testimony, aside from that of Mrs. Berry, shows that after this document was prepared by Mr. Berry, he sent for Mrs. Berry's father, Mr. Adams, who had been sheriff of the parish, who was a prominent citizen and who was acquainted with conditions generally, and presented it to him before it was signed. Whether Mr. Adams approved or disapproved it is not shown, but Mrs. Berry says she did not consult him about it.

We believe what Mrs. Berry says. Her testimony is convincing. Then, there are admitted facts and circumstances aside from what she says that inspire confidence in her. She was a true and faithful wife. Mr. Berry lived more than five years after the divorce was granted, and she was devoted and faithful to him down to the very day of his death. It is shown that he was in poor health for a long period prior to his death and several times confined to his room or in hospitals. When in need of some one at his bedside, he always called for her, and she always answered his call and remained with him as his nurse. She was with him during his last illness and was at his bedside when he died.

Defendant pleaded five-year prescription in bar of plaintiff's action to set

aside this contract of settlement, citing Civ.Code, art. 3542, which provides that actions for nullity or rescission of contracts, testaments, or other acts, are prescribed by five years.

But it was held in Mulford v. Wimbish, 2 La.Ann. 443 (to quote the syllabus), that "actions to rescind or annul agreements on account of error, fraud, or violence, are prescribed only by ten years; to be calculated, in cases of error or fraud, from the day on which either was discovered." That case is on all fours with this one and has never been overruled. It was there held that article 3542 of the Civil Code has no application to a case of this kind, the rule applicable being found in article 2221 of the Civil Code, which provides that:

"In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by a particular law, that action may be brought within ten years."

In the case of Weathersby v. Springfield Lumber Co., Ltd., 141 La. 577, 75 So. 416, this court said:

"The apparent conflict between these two articles [Nos. 2221 and 3542] was very fully considered in Brownson v. Weeks, 47 La.Ann. 1042, 17 So. 489, where it was held that article 3542 applied to all cases where the ground of nullity was the incapacity of the person contracting. Plaintiff's learned counsel invokes the earlier case of Mulford v. Wimbish, 2 La.Ann. 443, and other cases, but all this was threshed out in Brownson v. Weeks, and going once more over the same ground would serve no useful purpose."

We think the plea of prescription has no merit.

■ The contract here attacked shows that Mrs. Berry received absolutely nothing for her interest in the community. It recites that the consideration for her making it was that Mr. Berry assumed and agreed to pay the debts of the community, which were declared to amount to more "than the value of the property herein conveyed."

The facts disclosed by the record show unmistakably that at the time the community was dissolved, there stood in the name of T. V. Berry numerous tracts of real estate situated in the parish of Franklin, and that he owned personal property, all of which having a value of more than $80,000. It is further shown that the debts amounted to approximately $29,000. The witnesses called by plaintiff to testify as to the value of the real estate and personal property owned by the community at the time it was dissolved were prominent citizens, well acquainted with conditions and affairs generally in the parish of Franklin at that time, and had no interest whatsoever in the outcome of the litigation. Mr. Price, who testified as to the value of the principal items of real estate, was assessor for the parish for many years and thereafter was sheriff. Other citizens of equal prominence were called, and according to their testimony the real estate and the personal property were worth in 1928 $89,530.93. Deducting the debts, amounting to $29,406, there is left a net value of more than $60,000.

The defendant called only one witness, Mr. C. W. Berry, to testify as to the value

of this property. According to his estimate the real property was worth some $15,000 or $20,000 less than the value placed upon it by plaintiff's witnesses. So that if we take his estimates there was still an equity in the property of more than $40,000, one-half of which belonged to Mrs. Berry. For this, as we have said, she received not one penny.

From this it manifestly appears that, whether Mr. Berry intended to practice fraud upon his divorced wife or whether he was mistaken as to the amount of debts which he owed and the value of the property, Mrs. Berry relinquished her interest in a valuable estate for no consideration whatever.

She says that she signed this document through error, and, as we have said, we believe what she says. It follows that this contract must be set aside.

There is a serious controversy between the parties as to what disposition should be made of the proceeds of the insurance policies. Counsel for plaintiff contend that the entire amount should go to Mrs. Berry, or in the alternative, she should receive one-half. Counsel for the administrator argue that the entire amount belongs to the separate estate of T. V. Berry.

All this insurance was on the life of T. V. Berry, and each of the policies was issued during the existence of the community between him and the plaintiff. In some of the policies Mrs. Berry was originally made beneficiary and in the others she was made beneficiary later on. But each of the policies contains the express provision that the insured might at any time, upon notice to the insurer, change the beneficiary. The insured exercised this right in 1926, before the dissolution of the community, and made the policies payable to his executors or administrators.

The insured had the right to make this change. In Dorsett v. Thomas, 152 La. 60, 92 So. 734, 736, this court said:

"It is an universally accepted principle in all jurisprudence that in any life insurance policy where the right is reserved to the insured to change his beneficiary, such as is stipulated in these policies, no beneficiary can acquire a vested right until after the happening of the condition on which they were issued; that is, after the death of the insured."

To the same effect is the case of Alba v. Provident Savings Life Assurance Society, 118 La. 1021, 43 So. 663.

This is, therefore, a case where policies of insurance were issued on the life of a husband during the existence of the community between him and his wife and where during the community the policies were, by the husband, made payable to his executors or administrators and where the insured died after the dissolution of the community.

Then what was the status of the proceeds or avails of these policies? Was the amount a community asset or did it belong to the separate estate of the insured?

The answer is found in Succession of Le Blanc, 142 La. 27, 76 So. 223, L.R.A.1917F, 1137, where it was held that the amount realized from such life insurance policies

is an asset of the community. The facts and circumstances relating to the policies in that case are almost indentical with those in this case. About the only difference between that case and this one is that there the community was dissolved by the death of the wife, and here it was dissolved by divorce. But that makes no difference in the legal situation.

If, in the case now under consideration, T. V. Berry had died after 1926, when all the policies were made payable to his executors or administrators, and before the community was dissolved by divorce, it would hardly be seriously contended that the proceeds of the policies would have become part of his separate estate. Such a contention would be in the teeth of the holding in Succession of Buddig, 108 La. 406, 32 So. 361. It is the fact that Mr. Berry, the insured in this case, died after the dissolution of the community, which gives rise to the argument that the amount of this insurance fell into his separate estate.

The same thing happened in the Le Blanc Case, supra. In that case the policies were issued during the existence of the community. In two of them the wife was made beneficiary "if living, if not then to the assured's executors, administrators or assigns, subject to the right of the assured to change the beneficiary."

The other policy was made payable to the wife "or, if the insured (should) survive the aforesaid beneficiary, to the administrators, executors, or assigns of the insured."

The insured survived his wife, the original beneficiary, and at her death, insured's estate automatically became the beneficiary. Mr. Le Blanc, the insured, continued to pay the premiums on the policies after his wife's death. After his death his creditors and some others contended that because the insured died after the dissolution of the community, the proceeds of the policies formed part of his separate estate. His administrators credited the proceeds to the community estate and charged the amount of the premiums paid by him after his wife's death to the community. The administrators' account was approved in this respect.

In the course of its opinion in the Le Blanc Case the court said:

"Life insurance in favor of the estate, the executors or administrators, of the person insured, forms a part of his estate at his death; and the status of the proceeds or avails of such life insurance—that is, whether it is community property or property of the separate estate of the insured—depends upon whether the contract of insurance was made during the marital community or when the insured was single. The status of the proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death. See Succession of Buddig, 108 La. 406, 32 So. 361; Succession of Verneuille, 120 La. 605, 45 So. 520; Succession of Roder, 121 La. 692, 46 So. 697, 15 Ann.Cas. 526. The account of the administrators is correct, in so far as the amount of the proceeds or

avails of the life insurance is credited to the community, and in so far as the amount of the premiums paid after the death of the wife of the assured is charged to the community and credited to the separate estate of the assured."

■ The reason underlying the rule stated in the Le Blanc Case, supra, that "the status of the proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death," is that insurance policies issued on the life of the insured and made payable to his estate are property, the ownership of which is vested in the insured at the date on which they were issued. If the policies are issued while the insured is single and he subsequently marries under the community regime, the community has no more interest in the policies than it would have in real estate or other property acquired prior to the marriage. The same is true if such policies—that is, policies made payable to the insured's estate—are issued after the dissolution of the community. But if the policies are issued during the existence of the community, they become the property of the community, the same as real estate or other property acquired during the community.

This principle of ownership was recognized in the case of Succession of Verneuille, supra. In that case the policies were issued on the life of John H. Verneuille prior to his marriage and made payable to his estate. He was married later and his wife survived him. The policies were collected by the executors of the insured. The surviving spouse claimed that the amount collected was a community asset and urged the point that each payment of the premiums during the community made with community funds was in effect a renewal of the policies, "and that, in consequence, the policies were renewed for the community, and not for his separate estate." But the court said:

"Our jurisprudence does not sustain that contention. On the contrary, it holds, in effect, that a policy issued to one of the spouses before marriage remains as part of the estate of the insured. The right of the beneficiary is not changed by the marriage. The date of the right is the date of the policy, and from that time on it remains the property of the insured.

"If it were otherwise, subsequent acts would have retroactive effect.

"Succession of Buddig, 108 La. 406, 32 So. 361, citing Estate of Moseman, 38 La. Ann. 219.

"At the date of the marriage, the husband owned this policy in his right absolutely, and he had stipulated that he alone was to be the beneficiary. This contract of insurance is a contract binding upon the community, and secures a property right as distinct as any right which one of the spouses can have against the other for property owned at the date of the marriage.

"Policies of insurance must be held subject to one rule as relates to ownership. It has always been decided by the courts of this state that it is vested in the insured absolutely when it is issued to him at a

date and for his benefit, free from the claim of any other person."

If, in the case just cited, the life insurance policy had been issued during the community and made payable to the insured's estate, a case would have been presented like that in Succession of Le Blanc, where it was held that the amount realized from the policies was a community asset. This is upon the theory, as we have said, that ownership of the policies vests at the time they are issued.

In the case at bar the trial judge ruled that plaintiff was entitled to one-half the proceeds of the life insurance policies, less the amount of premiums paid by the insured after the dissolution of the community, not upon the theory that the amount collected was a community asset, but because the policies were owned jointly by the plaintiff and the insured after the dissolution of the community, and that Mrs. Berry did not dispose of her interest in these policies by the contract of settlement with her husband. The result of the court's ruling giving to the plaintiff one-half interest in the amount collected is correct, but we think the reason for the ruling is not sound, our holding being that the amount collected was community property.

■ The purpose of the contract entered into by plaintiff and T. V. Berry after the divorce was granted was to settle the community affairs. That contract being null and void, it follows that there has been no settlement of the community and that it remains open for settlement.

But that does not affect the distribution of the proceeds of the insurance policies, which fell into the community. Under Act No. 189 of 1914, as amended and re-enacted by Act No. 88 (page 206) of 1916, the amount of the proceeds or avails of these policies is exempt from debt. There is no reason, therefore, why T. V. Berry's administrator should not forthwith pay to Mrs. Berry, the plaintiff, her community interest therein, which is one-half the amount collected less the amount of premiums paid by Mr. Berry after the community was dissolved.

■ The trial judge in his written reasons for judgment said: "In as much as this proceeding resolves itself into an action in the nature of a partition suit, we think the costs should be borne equally by the parties," and he so ordered.

We do not concur in this view. The action as it relates to this insurance is to compel the administrator to pay to plaintiff the entire proceeds of the policies, or in the alternative, one-half thereof. As administrator refused to recognize plaintiff's right to any interest in the amount collected, it should pay the cost of the proceeding.

For the reasons assigned the judgment appealed from, in so far as it orders the Franklin State Bank & Trust Company, administrator of the succession of T. V. Berry, to pay to Mrs. Margaret Adams Berry, plaintiff, the sum of $3,763.49, is affirmed, all costs of these proceedings to be paid by the administrator.

In so far as the judgment rejected plaintiff's demand to have the contract entered

into by plaintiff and T. V. Berry after the dissolution of the community by divorce decreed null and set aside, it is reversed, and it is now decreed that said contract was void and should be set aside, and it is so ordered.

O'NIELL, C. J., absent.