**FOUNTAIN et al. v. KIRBY LUMBER CORPORATION et al.**

No. 2179.

Court of Appeal of Louisiana. First Circuit.

Jan. 14, 1941.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellants.

Kay & Kay, of DeRidder, for appellees.

LeBLANC, Judge.

This is a suit to have set aside and annulled a certain sale of property made by the Sheriff, Ex Officio Tax Collector of Vernon Parish, at a public sale on November 4, 1933, of property sold in that parish for delinquent taxes for the year 1932. The property involved in this suit is described as being the North half of Northeast quarter (N. 1/2 of N.E. 1/4) and Southwest quarter of Southeast quarter (S.W. 1/4 of S.E. 1/4), Section 14, T. 2 S, R. 12 West La. Mer. It formerly belonged to the community existing between Mrs. Mollie Fountain, deceased, and her husband, J. M. Fountain, and had been assessed on the rolls of the Parish in the name of Mrs. Mollie Fountain, she being the record owner. The suit is instituted by her surviving husband and children who claim to be the owners of the property in indivision and is brought against Southwestern Lumber Company of New Jersey, the adjudicatee at tax sale, and Kirby Lumber Corporation, purchaser from the tax adjudicatee.

██ The facts as revealed by the record show that Mrs. Mollie Fountain acquired the property by warranty deed on August 21, 1926, and as there was no declaration in the act of purchase that it was acquired as her separate property, it became and formed part of the community between her and her husband. The property had always been assessed in her name. She died on February 9, 1931, leaving her husband as well as eight children to survive her. Some of her children were issue of a former marriage but they all inherit from her alike. Her succession was never opened or administered and no proceedings were ever taken to have her heirs recognized and placed in possession of the property.

For the year 1932, it was again assessed in her individual name notwithstanding the fact that she had died in February of the year previous and when the taxes for that year became due and delinquent the tax collector of the Parish issued the required notice of delinquency and addressed the same by registered mail in her name at her former address, Knight, Louisiana. The envelope containing the notice so addressed was returned to the tax collector's office bearing the notation across its face, "deceased". Moreover, the receipt card which accompanied the notice, intended to be signed by the addressee or her agent, was also returned, unsigned. The unopened envelope and the unsigned receipt card remained in the Sheriff's office until the date of the trial of this case.

The tax collector made no further effort to serve notices of delinquency on anyone nor to collect the taxes due on the property and, without further formality, proceeded to advertise the same for sale and on November 4, 1933, in accordance with the advertisement did offer it for sale at public sale, when Southwestern Lumber Company of New Jersey bid it in for the amount of the taxes due with interest and costs, the whole amounting to the sum of $67.82. The tax deed was drawn up in regular form, was filed in the office of the Clerk of Court on January 11, 1934, and duly recorded in the conveyance records of the Parish on March 11, 1934. Following the adjudication made to Southwestern Lumber Company that company rendered the property for assessment and taxation along with other properties owned by it in the Parish and the same was regularly assessed to it and the taxes paid by it. On July 14, 1936, Southwestern Lumber Company sold and conveyed to Kirby Lumber Corporation, along with others, the property herein involved without warranty, either express or implied. Thereafter, the Kirby Lumber Corporation rendered the property for assessment and paid the taxes as they became due on it each year.

Mr. and Mrs. Fountain were occupying the property at the time of her death and thereafter Mr. Fountain continued to reside on it for some time. After he moved off of it, either one or another of Mrs. Fountain's children lived on it or had it occupied by a tenant, and some form of physical, corporeal possession by them was shown continuously from the date of the tax sale to the time this suit was filed on August 9, 1939.

Plaintiffs contend that the sale of their property at the tax sale made on November 4, 1933, to Southwestern Lumber Company was null, void and of no effect and that likewise the transfer made by that company to Kirby Lumber Corporation was invalid for the reason that no valid or legal notice of delinquency and of intention to sell the property was issued, mailed or delivered to the owner or owners thereof, nor was such notice issued, mailed or delivered to anyone prior to the purported sale by the tax collector or to the execution of the deed, all as required by law.

As a defense it is urged that the tax sale was and is a legal and valid sale, the defendant, Kirby Lumber Corporation, claiming to be the owner of the property. Both defendants filed exceptions of no cause or right of action, pleas of two, three and five years' prescription and also a plea of estoppel. Kirby Lumber Corporation contends further that it became an innocent third purchaser of the property in good faith from the owner of record, having a right to rely on the faith and strength of the public records, and therefore it is entitled to be protected in its acquisition by the deed under which it holds. Both defendants plead, in the alternative, that in the event the tax sale be set aside and declared null and void that they should recover the respective amounts paid for the price of the adjudication and for the taxes since the year 1934. The prayer for these amounts is set out in a reconventional demand.

All pleas and exceptions were referred to the merits by the trial judge and after hearing and submission there was judgment in the lower court in favor of the plaintiffs decreeing them to be the owners of the property in the respective proportions claimed by them and further that the tax deed dated November 4, 1933, be declared null and void and further that the sale of July 14, 1936, from Southwestern Lumber Company to Kirby Lumber Corporation be likewise annulled and set aside. The judgment further decreed that as a condition precedent to the cancellation of the said tax sale and deed from the Southwestern Lumber Company to Kirby Lumber Corporation, the plaintiffs pay to Kirby Lumber Corporation the amounts prayed for in its reconventional demand for the price of the adjudication at the tax sale as well as for all taxes paid subsequent thereto. Both defendants have appealed.

It is practically conceded, as indeed it should be, that the tax sale and adjudication made on November 4, 1933, was null and void for failure of the tax collector to have given proper notice of delinquency to the owners of the property. The notice issued by him and addressed by registered mail to Mrs. Mollie Fountain, the then record owner, which was returned to him unclaimed with the notation that she was deceased, was in effect no notice whatever and the sale of the property for delinquent taxes based on such notice had to be declared null and void and of no legal effect, unless the fatal defect had been cured by prescription. See Wilkerson v. Wyche, 158 La. 596, 104 So. 381; Witson v. Joseph, La.App., 158 So. 661.

The prescription applicable would be that provided for in Section 11 of Article X of the Constitution of 1921, as amended. Under the terms of that section · of the article, a proceeding to set aside a sale of property for taxes based on the ground that no notice of delinquency had been given, must be instituted within five years from the date of the recordation of the tax deed. As is shown by the respective dates which would govern in this case, a period of more than five years elapsed, and ordinarily the prescription would apply. However, under the well established jurisprudence that prescription can be suspended during the time the owner remains in actual possession of the property. In Levenberg v. Shanks, 165 La. 419, 115 So. 641, 642, the Supreme Court stated that the peremption established by that section of the Article of the Constitution "does not accrue when the owner, at the time of the tax sale, remains in possession of the property. His continuing in possession, notwithstanding the sale, is a continuous protest against the sale. This was so held under similar provisions in the Constitutions of 1898 (article 233) and 1913 (article 233), and the ruling is equally applicable under the provision contained in the present Constitution." Very recently again, in the case of Skannal v. Hespeth, reported in 198 So. at page 661, the Supreme Court reaffirmed the principle by stating that "the prescription established by the Constitution [Section 11, Article X], however, does not run in favor of the tax purchaser as long as the tax debtor remains in physical possession of the property." Page 663.

It becomes necessary then to determine whether, under the facts shown, the owners of the property after the death of Mrs. Mollie Fountain, who became the tax debtors, had and remained in such physical, corporeal possession of the property as to interrupt the prescription pleaded. As held by the trial judge the testimony on that point is convincingly in favor of the plaintiffs. It shows occupancy of the property at all times by one or another of Mrs. Fountain's children, cultivation of it at different times by some of them and the leasing of it to tenants who not only cultivated it by making a garden but also pastured livestock and fished and trapped on it. A rather striking incident of corporeal possession is

shown by the action of one of the heirs in protesting against the defendants who at one time started to put a highway across the property in order to cut the timber and her protest is shown to have been effective. Undoubtedly therefore as against the tax purchaser the possession shown is sufficient to have produced the interruption of the prescription under which it now claims the property.

██ The plea of estoppel is grounded on the alleged failure of the plaintiffs to have the property assessed to them and to bring suit to annul the tax sale and in further permitting the defendants to have the assessment made in their names and in paying the taxes as they became due. It is elementary that one who pleads an estoppel must show, in order to support his plea, that he has been misled by the act or omission complained of, in pursuing or following a course of conduct different from what he would otherwise have followed, and which leads to his detriment. We fail to see how either of the defendants was misled by the conduct of the plaintiffs by the acts or rather omissions complained of under the plea herein filed. On the contrary, the physical, corporeal possession of the property which they retained at all times after the death of the owner of record should have indicated to those defendants and to anyone else that they claimed to be the owners of the property, a claim they seem to have persisted in and which they now seek to have established in this very suit. The plea was correctly overruled by the judgment of the trial court.

██ The plea of prescription of two years is based on some provision of the bankruptcy laws. It appears that the title deed to the Kirby Lumber Corporation grows out of a bankruptcy proceeding of the Kirby Lumber Company in which the trustee in bankruptcy of that company was joined by the Southwestern Lumber Company in transferring the property to the Kirby Lumber Corporation. Defendants plead, under the federal statute, that a suit to question a sale in bankruptcy is prescribed by two years. The plea might have some merit in a suit between these two defendants but we fail to see how it can be invoked against these plaintiffs in the present action which is a suit to set aside a tax sale purported to have been made under the laws of this State and which was in no manner involved in the bankruptcy proceedings referred to.

This brings us now to perhaps the most serious contention in the case, that is the one arising out of the defense of Kirby Lumber Corporation that it is entitled to be protected in its title to the property because, as it is urged, the same was acquired by it on the faith and strength of the public records. In support of this defense it relies principally on the decision of the Supreme Court in the case of Bell v. Canal Bank & Trust Co., 193 La. 142, 190 So. 359.

The important difference between that case and the present, however, lies in the fact that there was some secret agreement between the tax debtors and their agent regarding the payment of taxes on the property and it was because of the fraud practiced by the agent in not making the payment of taxes when due and by himself purchasing the property at tax sale, that the sale was attacked. The agent who became the tax purchaser subsequently mortgaged the property and the Canal Bank & Trust Company in due course acquired the mortgage notes from the mortgagee. It became necessary for it to foreclose its mortgage and bid in the property. The suit brought by the plaintiffs was one in jactitation which was converted into a petitory action by the defendant. There was nothing of the secret or latent equities growing out of the agreement with their agent, to which the tax debtors were entitled, apparent on the face of the records and no defects in the sale otherwise appeared. The court held, naturally, that the defendant Bank, under the circumstances under which it became the purchaser of the property could not be bound by any secret understanding between the original tax debtors and their agent which they knew absolutely nothing about.

██ The sale in this case is attacked on the lack of observance of the very fundamentals required by law, to divest an owner of his property by a tax sale. Anyone buying property under such title is at once placed on his guard because the rights of the owner are always protected to the fullest extent that they can under the law. The purchaser of such title must see therefore that all the legal formalities have been carefully observed. It would not have taken much investigation in this case to find out that in two most important respects they had not been carried out. Notice of delinquency had not been given and the tax collector had not filed his procès verbal of the tax sale as he is required to do

under Section 51 of Act No. 170 of 1898. Moreover, when the Kirby Lumber Corporation took its title to the property it accepted it without warranty, either express or implied. That in itself was an indication of weakness in the title and should have led to greater and more careful investigation. Beyond this, the continued possession of the property by the tax debtors and their control over it by forcibly keeping the defendants or their agents off of it is evidence of precariousness which cannot be overlooked. Had they had faith in their title, we can hardly believe that they would have permitted such dominion to be exercised over the property by parties who they now claim had no further rights in it.

We are satisfied that on this issue, as well as on all others, the judgment appealed from is correct, and it is therefore affirmed.