ESTATE OF VIOLA F. SAIA, SEREDO J. SAIA, EXECUTOR, AND SEREDO J. SAIA, TRANSFEREE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3565–72, 6350–72. Filed January 28, 1974.

*Bernard J. Capella*, for the petitioners.
*Paul H. Waldman*, for the respondent.

OPINION

BRUCE, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of Viola F. Saia in the amount of $10,217.43, and asserted transferee liability for the amount against the petitioner Seredo J. Saia as transferee and beneficiary of the assets of Viola's estate. Seredo filed separate petitions with this Court contesting respondent's determinations—one as executor of Viola's estate, and one in his individual capacity as transferee and beneficiary of the assets of Viola's estate. Seredo resided at 2938 S. Palm Drive, Slidell, La., at the time the petitions herein were filed.

The cases were consolidated for trial, briefing, and opinion.

Certain adjustments reflected in the statutory notice of deficiency in the estate tax, dated February 22, 1972, have been conceded or are not contested by petitioners. The parties have also stipulated that Seredo is liable for any estate tax deficiency determined to be due from the Estate of Viola F. Saia.

The only issue remaining for determination is whether one-half of the proceeds of two insurance policies obtained upon the life of Viola are includable in her gross estate.

The cases were submitted on stipulations of fact and the stipulations together with the exhibits attached thereto are incorporated herein by reference.

Viola and Seredo were married in 1927 and were residents of the State of Louisiana at all times material herein. Viola died on December 7, 1967, and Seredo was designated "Executor" of her estate by the 22d Judicial Court, Parish of St. Tammany, Covington, La., on January 3, 1968. An estate tax return (Form 706) for the Estate of Viola F. Saia was filed with the district director of internal revenue at New Orleans, La., on March 7, 1969.

On May 28, 1963, Metropolitan Life Insurance Co. issued life insurance policy No. 636528413 PR with a death benefit of $12,500.

On September 27, 1963, Occidental Life Insurance Co. of California issued life insurance policy No. 4126723 with a death benefit of $25,000.

Seredo was the named beneficiary and owner of both the Metropolitan and the Occidental policies. Both policies were taken out during the marriage of Viola and Seredo and the premiums on the policies were paid out of community funds. The right of the named owner under the policies included the following: (1) the right to change the beneficiary; (2) the right to pledge the policies as security; (3) the right to borrow on the policies; (4) the right to cancel, terminate, or surrender the policies; and (5) the right to assign or revoke the assignment of the policies.

Other than the two policies mentioned above, neither the husband nor wife owned any separate property during their marriage. All their property, including real estate, stocks, bonds, notes, and insurance (other than the two policies), was community property, substantially all of which was registered in the name of the husband only.

No part of the proceeds of the Metropolitan and Occidental policies was included in the gross estate of Viola in the estate tax returns filed on behalf of her estate. In the notice of deficiency dated February 22, 1972, respondent determined that the two policies were community property and increased the value of Viola's gross estate by one-half the face amount of each policy.

Under section 2042 of the Internal Revenue Code of 1954 [1] the value of a decedent's gross estate shall include the proceeds of insurance policies on the life of the decedent receivable by beneficiaries other than the decedent's executor if, at the time of his death, the decedent possessed any of the "incidents of ownership" in the policy

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

"exercisable either alone or in conjunction with any other person." Where, however, the decedent did not possess any of such incidents of ownership at the time of his death, and the executor was not the beneficiary, then no part of the proceeds would be includable in the decedent's gross estate under section 2042. Sec. 20.2042–1(c)(1), Estate Tax Regs.

The term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes "the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." Sec. 20.2042–1(c)(2), Estate Tax Regs.

In the present case, the parties have agreed that Seredo, as the named owner of both policies, had the right to exercise all of the incidents of ownership therein. None of the incidents of ownership were exercisable by Viola.

Respondent contends that the insurance policies in question were community property and that, under Louisiana law, Viola had a vested one-half interest and accordingly possessed one-half the incidents of ownership therein; that her husband, Seredo, had control and management of the community property, not as owner of the property, but as agent for the community, and that such right to control and manage the community did not defeat his wife's rights of ownership in the policies in question.

We recognize that under Louisiana law assets acquired during marriage are presumed to be community property and that this presumption is not rebutted by the fact that title to a particular asset is held solely in the name of one spouse. La. Civ. Code arts. 2402, 2405. It is well established, however, that in Louisiana a life insurance policy is a contract *sui generis* which is not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds.

In *Catalano* v. *United States*, 429 F. 2d 1058 (C.A. 5, 1969), the Fifth Circuit held that where a husband took out a policy of insurance on his life and irrevocably named his wife the beneficiary and owner of the policy, he retained no interest in the proceeds of the policy under Louisiana law, and accordingly possessed no incidents of ownership such as would have required inclusion in the husband's estate of one-half of the proceeds of the policy, under section 2042. In so holding, the court stated:

It is true, as the government urges, that under Louisiana law all assets acquired during the marriage are presumed to be community property, La. Civ.

Code, Art. 2405, and that the presumption is not rebutted by the fact that title to a particular asset is held solely in the name of one spouse. *E.g.*, De Maupassant v. Clayton, 1949, 214 La. 812, 38 So. 2d 791; Johnson v. Johnson, 1948, 213 La. 1092, 36 So. 2d 396.

However, as the District Court correctly stated, in Louisiana a life insurance policy is a contract *sui generis*, governed by rules peculiar to itself. It is the outgrowth of judicial precedent and not of legislation, and, as such, it is not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds. Sizeler v. Sizeler, 1930, 170 La. 128, 127 So. 388. Even though it is a community property state, Louisiana long ago established the clear precedent under its jurisprudence

"that a policy of insurance, issued at the instance of the husband, upon his own life, in favor of his wife, inures to her separate benefit from the date of its issuance, and that the interest so acquired by the wife is not then or thereafter affected by the fact that the premiums are paid by the husband from the funds of the community. * * *"

Succession of Desforges, 1914, 135 La. 49, 64 So. 978, 981; accord Lambert v. Penn Mutual Life Insurance Company, 1898, 50 La. Ann. 1027, 24 So. 16; Putnam v. New York Life Insurance Company, 1890, 42 La. Ann. 739, 7 So. 602; Pilcher v. New York Life Insurance Company, 1881, 33 La. Ann. 322.

The court rejected the Government's argument that the cited cases were old and should be disavowed as inconsistent with later decisions, stating: "We reject the government's argument and find that the nearly century old rule—that life insurance policies acquired during marriage in which the wife is irrevocably named the beneficiary inure to her separate estate—is alive and well in Louisiana." It noted that the cases relied upon by the Government were distinguishable and also that the doctrine of the older cases had recently been affirmed in *Scott* v. *Scott*, 179 So. 2d 656 (La. Ct. App. 1965).

The court further held that *Freedman* v. *United States*, 382 F. 2d 742 (C.A. 5, 1967), which is also relied upon by respondent in the present case, was not controlling in the *Catalano* case. In *Freedman*, the decedent insured her life and named her husband the beneficiary. He signed as owner. The Fifth Circuit held that the policy was owned by the marital community and that one-half its value was includable in the wife's gross estate. In so holding, the court noted that under Texas law property purchased with community funds is presumed to belong to the community even though title is in the name of one spouse only, and that to rebut that presumption Texas requires that the unnamed spouse intended a gift of her community interest. In the absence of an affirmative act clearly reflecting such an intention or a clause expressly purporting to transfer the wife's community interest to her husband's separate estate, the court, in *Freedman*, stated it must be assumed she merely agreed that he should own the policy as the community's agent.

In concluding that *Freedman* v. *United States, supra,* was not controlling in the *Catalano* case, the Fifth Circuit stated (429 F. 2d at 1061–1062):

If there were no controlling Louisiana law we might well find *Freedman* persuasive. But *Freedman* dealt with the law of Texas and we cannot accept the government's sweeping conclusion that the same rules of community property are followed in Texas and Louisiana. The Louisiana jurisprudence is well settled that life insurance policies on the life of the husband unconditionally owned by the wife or in which she is the irrevocable beneficiary are, as a matter of law, deemed part of her separate estate. They therefore are not within the Louisiana presumption that all property acquired during the marriage is community property. Moreover, LSA–R.S. 22:1521 provides that donations inter vivos of life insurance policies and the naming of beneficiaries therein are not governed by any other provisions of Louisiana law relative to the form of donations inter vivos. Thus, no formal act is necessary to complete the gift and it is not necessary for us to find a specific, affirmative act of donative intent as it was when we were considering Texas law in *Freedman.*[1] *See, e.g.,* Sizeler v. Sizeler, *supra.* [Fn. omitted.]

The fact that in *Catalano,* the husband was the insured and the wife the owner-beneficiary, whereas in *Freedman,* as well as the present case, the wife was the insured and the husband the owner-beneficiary, is not considered a material distinction. As held by the court in *Catalano,* in Louisiana a life insurance policy is a contract *sui generis,* not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds. See also fn. 1 at 1062 of the *Catalano* opinion.

One other matter requires our attention before reaching our final conclusion in the present cases. As previously indicated, the cases were submitted on stipulations of the parties. We particularly refrained from adopting all of the stipulations as our findings of fact. Paragraph 5 stated "Neither Husband nor Wife owned any separate property during their marriage," and paragraph 6 stated "All the property (real estate, stocks, bonds, notes, insurance, etc.) owned by Husband and Wife was community property." Acceptance of either of these agreements as findings of fact would entirely remove the necessity for the Court to determine whether the policies involved were community property or the separate property of the husband. Both are questions of law for the determination of which the law of Louisiana is controlling.

It is well established by this and other courts that the Court is not bound to accept, as controlling, stipulations of the parties as to conclusions of law. In *Ohio Clover Leaf Dairy Co.,* 8 B.T.A. 1249, 1256 (1927), affirmed per curiam 34 F. 2d 1022 (C.A. 6, 1929), certiorari denied 280 U.S. 588 (1929), it was stated:

That portion of the agreement between counsel which we have quoted must be disregarded as of no effect for two reasons. In the first place, insofar as it at-

tempts to stipulate that an item is deductible under the statute as a loss, it is a conclusion of law. As such it is either an agreement which entirely removes the question from the proceeding, or else it is an attempt to limit the function of the Board to decide the issue of liability. In either aspect it is ineffective. * * *

See also *Lucius N. Littauer et al., Executors*, 25 B.T.A. 21, 28 (1931); *Commissioner v. Cummings*, 77 F. 2d 670, 672 (C.A. 5, 1935). *Ernst Kern Co.*, 1 T.C. 249, 265 (1942); *Bloomfield Steamship Co.*, 33 T.C. 75, 86 (1959), affd. 285 F. 2d 431 (C.A. 5, 1961). In *Estate of Sanford v. Commissioner*, 308 U.S. 39, 51 (1939), the Supreme Court stated "We are not bound to accept, as controlling, stipulations as to questions of law."

In *Catalano* v. *United States, supra*, the Fifth Circuit held that, under Louisiana law, the insurance policy involved therein was the separate property of the owner–beneficiary spouse and not community property. The facts of the present cases are substantially similar and require a similar conclusion. Accordingly, we give no effect to the stipulations quoted above and hold that the insurance policies involved herein were the separate property of Seredo, the owner–beneficiary, and not community property.

We have carefully considered the cases relied upon by respondent and are satisfied that they are distinguishable upon the facts or the issues involved.

For the reasons hereinbefore discussed, we hold that the proceeds of the insurance policies in question are not includable in the gross estate of the decedent, Viola, under section 2042. We agree with *Catalano* v. *United States, supra*, but, in any event, we are compelled to follow it because it is "squarely in point" and an appeal in the instant case would be to the Fifth Circuit. *Jack E. Golsen*, 54 T.C. 742, 757 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971).

In order that effect may be given to the concessions of the parties,

*Decisions will be entered under Rule 155.*