WILLIAM E. BERGMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3483-75.    Filed August 24, 1976.

*Jerome J. Reso, Jr.,* and *F. Kelleher Riess,* for the petitioner. *Deborah R. Jaffe,* for the respondent.

RAUM, *Judge:* The Commissioner determined that petitioner is liable as a transferee for an estate tax deficiency of $11,607.09 in respect of the estate of his deceased wife Margaret Black Bergman. Although the parties have reached agreement regarding several adjustments set forth in the notice of deficiency, there remain in controversy two adjustments as well as petitioner's liability as a transferee. In particular, the following questions are still unresolved. First, are one-half of the proceeds of a life insurance policy on the decedent's life in which

petitioner was named the owner and the beneficiary includable in decedent's gross estate? The resolution of this question would not only dispose of one of the disputed adjustments, but an affirmative answer thereto, as explained hereinafter, would also establish petitioner's transferee liability. Second, if none of the proceeds of the policy are includable in decedent's gross estate, is petitioner liable as a transferee by reason of the usufruct in his wife's share of their community property, which by operation of law was conferred upon him at the time of her death? Finally, if petitioner is liable as a transferee, what amount is includable in decedent's gross estate in respect of her interest in the contributions made on petitioner's behalf to a pension plan maintained by his employer?

FINDINGS OF FACT

The parties have filed a stipulation and supplemental stipulation of facts with exhibits which are incorporated herein by this reference.

Petitioner William E. Bergman resided in Metairie, La., at the time the petition was filed herein. He and Margaret Black Bergman were married on December 28, 1934. They remained married to each other until his wife died on November 26, 1970. She died intestate and was survived by her husband and their son, William Alan Bergman. All the property owned by her at her death was community property.

Intestacy succession proceedings were opened in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, on March 2, 1971. No one was appointed administrator of Mrs. Bergman's estate. On April 13, 1971, a judgment of possession was rendered by that court in which it was decreed that:

(2) William E. Bergman, husband of decedent, be and he is hereby recognized as the surviving spouse in community with the late Mrs. Margaret Black, wife of William E. Bergman, and as such, entitled to the ownership of and to be placed in possession of an undivided one-half of all the community property left by the said decedent, together with the usufruct of the other undivided one-half, and

(3) That William Alan Bergman be and he is hereby recognized as the sole heir of the decedent and, as such, entitled to the ownership of and to be placed in possession of all the property belonging to the decedent, both real and personal, and in particular, to the decedent's undivided one-half interest in the property belonging to the community of acquets and gains which existed

between decedent and William E. Bergman, subject to a usufruct in favor of the said William E. Bergman * * *

In accordance with Louisiana law the usufruct [1] referred to in the decree terminated upon petitioner's remarriage on July 11, 1972. It is stipulated that the value of the usufruct at the date of Mrs. Bergman's death was $35,351.27.

Sometime in 1966, prior to the death of Mrs. Bergman, Hal G. Orner, an insurance agent and friend of the Bergmans, suggested to petitioner that he consider purchasing life insurance on the life of his wife. The subject was initially discussed at a meeting between Orner and petitioner in petitioner's office. Mrs. Bergman was not present.

At this initial meeting, Orner explained to petitioner that in the event his wife predeceased him, insurance on her life could provide funds to cover the expenses of administering her estate, death taxes, and other costs incidental to her death. He also advised petitioner that in order to avoid having the proceeds of such insurance included in Mrs. Bergman's estate for estate tax purposes, she should not have any of the so-called "incidents of ownership." Instead, petitioner should be the sole owner of the policy. Orner did point out one possible theoretically adverse consequence of petitioner being the sole owner. If he should predecease his wife, the value of the entire policy would have to be included in his gross estate for estate tax purposes. In Orner's opinion, however, this possibility was of little practical significance. As he explained to petitioner, under the plan he was recommending, petitioner would borrow against the cash value which accumulated under the terms of the policy to pay part or all of the premiums. As a result, even if he predeceased his wife and even if the policy were therefore included in his gross estate for estate tax purposes, it would have little or no value and thus would have but little impact on the total estate tax due in respect of his estate.

Both petitioner and Orner subsequently discussed the idea of insuring her life with Mrs. Bergman. She was advised both of the purpose of the insurance and of Orner's suggestions in respect of ownership of the policy. The Bergmans eventually decided to follow Orner's recommendations.

---

[1] The usufruct is an interest in property peculiar to Louisiana in the United States and apparently derived from Roman law. It is more fully described in the opinion, hereinafter.

In August or September 1966,[2] an application was made for a life insurance policy in the face amount of $50,000 on the life of Mrs. Bergman. The policy application was signed by William E. Bergman as applicant. Decedent signed the following statement on the application: "I hereby consent to this application and declare that the above particulars relating to the life to be assured are full and true." The decedent signed this statement on a line beneath which appeared the following words: "Life to be assured must sign here if he is not also the applicant." In accordance with the application, policy No. 5282440 (the Sun Life policy) was issued by Sun Life Assurance Co. of Canada.[3] William E. Bergman was the named applicant for the policy as well as the named beneficiary. The beneficiary designation was not irrevocable. Both the application and the policy designated petitioner as the owner of the Sun Life policy and were completed in the manner customarily followed both by Orner and by the New Orleans branch office of Sun Life Assurance Co. when it was desired by their clients that one spouse be the sole owner of a life insurance policy on the life of the other. Insofar as the insurance company was concerned, petitioner alone possessed the various rights (such as the right to change the beneficiary and the right to borrow against the cash value) specified in the policy issued on the life of his wife. It would deal only with him in respect of the exercise of those rights.

The Sun Life policy was in force on the date of Mrs. Bergman's death. The premiums on the policy from the date of issuance to that date totaled $11,281.92. Of this amount, $5,094.63 had been paid by borrowing against the policy. The balance of $6,187.29 was paid from funds in a community checking account. Net proceeds in the amount of $44,905.37 were paid to petitioner as beneficiary on December 9, 1970.

At the time of the decedent's death, petitioner was a participant in a qualified pension plan maintained by his employer, Mathes, Bergman & Associates. The plan was a contributory split-funded pension plan under which

[2] The parties have stipulated that "On August 28, 1966, an application was made." That date appears on the application (and the policy) as the due date of the first premium. However, there may be some question whether the application was completed and submitted on that date inasmuch as petitioner's signature thereon is dated Sept. 17, 1966. Nevertheless, nothing herein turns upon the precise date when the application was made.

[3] The parties have stipulated that the policy was issued on Sept. 17, 1966, but the policy itself states that it was "Signed and sealed at Montreal on January 24, 1967 (the date of issue) on behalf of Sun Life Assurance Company of Canada."

contributions made by employees were first used toward the payment of insurance premiums. The trustees used employee and employer contributions to acquire life insurance policies to fund the death benefits provided under the plan and as vehicles for the purchase of annuities which were acquired in order to provide retirement benefits. Funds not used to pay premiums on life insurance policies were invested in securities as part of an auxiliary fund.

In the event of termination of employment for a reason other than death, retirement, or disability, certain vested benefits were provided by the plan. If the terminated employee had less than 5 years participation in the plan, he was entitled to receive an amount equal to his own contributions. If he had more than 5 years participation, he was entitled to receive the larger of an amount equal to his contributions or a scheduled percentage of the cash surrender value of all life insurance policies purchased on his life by the trustees. The vested portion increased with the length of participation in the plan.

At the time of decedent's death, petitioner had been a participant for less than 5 years. Accordingly, the amount vested in him was a sum equal to his contributions. As of the date of decedent's death, the total contributions made by the petitioner were $3,037.36, and the total contributions made by the employer for his benefit were $43,232. Thus, the total contributions to the plan on behalf of the petitioner were $46,269.36.

In the Federal estate tax return filed on behalf of the Estate of Margaret B. Bergman no portion of the proceeds of the Sun Life policy was included in the gross estate nor was any amount included in respect of the contributions made prior to decedent's death and on petitioner's behalf to the Mathes, Bergman & Associates pension plan.

In his determination of deficiency the Commissioner made certain adjustments which have since been settled by agreement of the parties. Two other adjustments are still in dispute: (1) That "the community of the decedent and her husband owned Sun Life Insurance Policy #5Q82440 [sic]," and, accordingly, that "one-half of the proceeds, or $22,452.69, is includible in decedent's estate," and (2) that the gross estate should be increased by $1,518.83 to reflect "decedent's interest in the payments made into the Mathes, Bergman and Associates, Inc.

Pension Plan." The Commissioner also determined that petitioner was liable for the resulting deficiency as a transferee.

OPINION

The threshold question in this estate tax case is whether petitioner, the decedent's surviving spouse, is liable as a transferee for whatever deficiency might ultimately be determined. The method for assessing and collecting the liability of a transferee is prescribed by section 6901, I.R.C. 1954. But it is firmly established that section 6901 does no more than specify the machinery for enforcing transferee liability; the liability itself must be founded upon State law or some other provision of Federal law. *Commissioner v. Stern,* 357 U.S. 39; *United States v. Bess,* 357 U.S. 51. In this case the Commissioner proposes two alternative (but in no way inconsistent) theories on which the petitioner is liable as a transferee.

(1) Respondent's first theory is that petitioner is personally liable under section 6324(a)(2) for the unpaid estate tax. Section 6324(a)(2) imposes personal liability for a decedent's estate tax upon the recipients of property which is includable in the decedent's gross estate under sections 2034 to 2042, inclusive.[4] It is respondent's position that one-half of the Sun Life proceeds are includable in decedent's gross estate under section 2042, which provides, in part, that "the value of the gross estate shall include * * * the amount receivable by * * * beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership." He contends that the Sun Life policy was community property, and that, accordingly, decedent possessed incidents of ownership with respect to one-half thereof at her death. Therefore, he argues, one-half of the proceeds are includable in the decedent's gross estate under section 2042, cf. sec. 20.2042-1(c)(5), Estate Tax Regs., and since petitioner was the recipient of these proceeds, he is liable under section 6324(a)(2) for the estate tax which was less than the amount of such proceeds. Petitioner, on the other hand, contends that his wife possessed no incidents of ownership in respect of the Sun Life policy because, in his view, the policy was his separate property. Therefore, he maintains, no portion of the proceeds

---

[4] For purposes of enforcing the liability under sec. 6324(a)(2) the recipients described therein are considered transferees. Sec. 6901(h).

were includable in her gross estate under section 2042. We agree with petitioner. *Estate of Viola F. Saia,* 61 T.C. 515.

In *Estate of Viola F. Saia* the Court faced the same issue—the includability of life insurance proceeds in a decedent's gross estate—and, on virtually identical facts, held in favor of the taxpayer. Respondent now urges us to reconsider that decision. As in this case, the critical question there was whether the life insurance policies were community property or the surviving spouse's separate property, a question which turns upon State law. In reaching the decision in *Saia* that the policies were separate property, the Court relied upon the Fifth Circuit's interpretation in *Catalano v. United States,* 429 F.2d 1058 (5th Cir.), of the relevant Louisiana law. Respondent contends that much of the language in the Fifth Circuit's opinion, especially that pertaining to the sui generis nature of life insurance under Louisiana law, was erroneous dicta (described by respondent as "Unnecessarily broad language" that "unwarrantedly over-simplified the *sui generis* concept as it applies to life insurance policies under Louisiana law"). In particular he argues that, despite language in the Fifth Circuit's opinion to the contrary, an insurance policy acquired during marriage with community property funds must be presumed to be community property, and this presumption can be overcome only by strong and convincing evidence. Even assuming respondent is correct in his interpretation of Louisiana law, we hold for petitioner on the facts of this case.[5]

It is indisputable that in Louisiana, a spouse may give his share of community property to the other spouse. La. Civ. Code Ann. art. 1746 (West 1952); *Succession of Byrnes,* 206 La. 1026, 20 So. 2d 301. While a donation of "immovable property or incorporeal things" must ordinarily be evidenced by a notarial act, La. Civ. Code Ann. art. 1536 (West 1952), a special statutory exception provides that "Donations inter vivos of life insurance policies * * * are not governed by the provisions of the Revised

---

[5] However, with regard to the proper interpretation of Louisiana law, it is not without some significance that the views expressed in *Catalano* were those of the Fifth Circuit the jurisdiction of which includes Louisiana. Its judges have considerably more opportunity than those elsewhere in the country to become familiar with the intricacies of Louisiana law, and the views of that court as to Louisiana law, while not conclusive, should perhaps carry more than ordinary weight. Cf. *Propper v. Clark,* 337 U.S. 472, 486-487; *Helvering v. Stuart,* 317 U.S. 154, 163; *MacGregor v. State Mutual Co.,* 315 U.S. 280, 281; *United States v. Durham Lumber Co.,* 363 U.S. 522, 526-527; *Sims v. United States,* 359 U.S. 108, 114; *Estate of Spiegel v. Commissioner,* 335 U.S. 701, 707-708.

Civil Code of 1870, or any other laws of [Louisiana] relative to the form of donations inter vivos." La. Rev. Stat. sec. 22:1521 (West Supp. 1976). No formal act is necessary. Thus, in the instant case, it must only be shown, albeit by sufficiently persuasive evidence, that Mrs. Bergman intended the Sun Life policy issued in her husband's name to be his separate property.

To be sure, as respondent contends, the formal manner in which the application for the Sun Life policy was filled out is equally consistent with an intention on the part of Mrs. Bergman that her husband have nominal title to the policy in his statutorily prescribed role as head and master of the community,[6] as with an intention on her part that the policy be his separate property. However, we find credible the uncontradicted testimony of Mr. Orner and petitioner which in substance indicated that the decedent intended the policy to be petitioner's separate property, and we find it sufficiently compelling to overcome the community property presumption. Mrs. Bergman was advised of substantial benefits that might accrue if the policy were her husband's separate property. Nothing in the record suggests that she did not want to do whatever was necessary to secure those benefits. Moreover, our conclusion that the necessary intent was present is reinforced by the fact that, at the time the policy was issued, neither the insurance agent who sold it, nor the company that issued it, customarily followed any more demonstrative procedures when issuing policies for other clients who desired that one spouse own as his separate property an insurance policy on the life of the other. We therefore hold that the Sun Life policy was petitioner's separate property and the proceeds thereof were not includable in decedent's gross estate.[7] *Estate of Viola F. Saia, supra;* cf. *Kroloff v. United States,* 487 F.2d 334 (9th Cir.). Since the parties have agreed that

---

[6] See La. Civ. Code Ann. art. 2404 (West 1971).

[7] Respondent cites several Louisiana decisions for the proposition that, where an insurance policy is acquired during marriage with community property funds and the husband designates himself or his estate as beneficiary, the proceeds of the policy are community property. See *Thigpen v. Thigpen,* 231 La. 206, 91 So. 2d 12; *Berry v. Franklin State Bank & Trust Co.,* 186 La. 623, 173 So. 126; *Succession of Le Blanc,* 142 La. 27, 76 So. 223; *Succession of Buddig,* 108 La. 406, 32 So. 361. In those cases, however, the policies themselves were community property, and the conclusion reached in each case—that the proceeds were also community property—stemmed from the principle enunciated in the first of those decisions that a husband "has no right to transact so as to build up a separate estate to the disadvantage of the community." *Succession of Buddig,* 108 La. at 408, 32 So. at 362. Inasmuch as we have concluded that the Sun Life policy was petitioner's separate property, those decisions are not applicable here.

no other property was includable in decedent's estate under sections 2034 through 2041, and the record discloses no other insurance policies on decedent's life, we hold that petitioner is not liable as a transferee under section 6324(a)(2).

(2) Wholly apart from that portion of the deficiency attributable to the Commissioner's inclusion of the life insurance proceeds in the decedent's gross estate—which we have disapproved above—there remains an estate tax deficiency at least in respect of those adjustments agreed to by the parties in their stipulation. We must therefore decide whether petitioner is liable as a transferee in respect of any such remaining deficiency. Since Mrs. Bergman died intestate, her son was her sole heir under Louisiana law (see *infra*), and if petitioner is to be treated as a transferee here it can be only upon the basis of the "usufruct" under Louisiana law that he enjoyed in the decedent's share of the community property. The Commissioner relies upon no other additional ground as the basis for his assertion of transferee liability. The concept of the usufruct is unique in this country and appears to be found only in Louisiana. It has been described as follows:

> It is basic civilian theory that full enjoyment of property involves three principal rights: *usus,* the right to utilize the thing for one's own purposes; *fructus,* the right to gather and use the fruits of the thing; and *abusus,* the right to alienate—to sell or mortgage. The usufructuary enjoys the first two of these rights. The Civil Code defines usufruct as the right of enjoying a thing the ownership of which is vested in another. The usufructuary may draw from the thing "its profits, its utility and its advantages." If the thing can be enjoyed without changing its substance, the usufruct is "perfect." If, however, the thing cannot be used or enjoyed except by "consuming" it, the usufruct is "imperfect." The obligation of the usufructuary having imperfect usufruct of a thing is simply to restore its estimated value at the termination of usufruct. On the other hand, where usufruct is perfect, the usufructuary must return the thing itself, in its original condition except for normal wear and tear and deterioration which have not been caused by his negligence. The *abusus,* or right of alienation, remains in the naked owner of the property, who becomes the full owner at the termination of the usufruct. [Fn. refs. omitted.]

Comment, "The Usufructuary's Obligation to Preserve the Property," 22 Loyola L. Rev. 808, 809.

In Louisiana, when a married person dies intestate and leaves issue, whether or not survived by a spouse, the issue are his sole heirs. La. Civ. Code Ann. art. 902 (West 1952); cf. *Dew v. Hammett,* 150 La. 1094, 91 So. 523; *Breland v. Humphries,* 50

So. 2d 69 (La. 2d. Cir. Ct. App.); *Fountain v. Kirby Lumber Corp.,* 199 So. 603, 605 (La. 1st Cir. Ct. App.). They succeed to the ownership of the decedent's property including his share of any community property, and are personally liable for the debts of his estate. La. Civ. Code Ann. arts. 915 and 1423 (West 1952). If the decedent leaves a surviving spouse in addition to issue of the marriage, the surviving spouse is entitled merely to a usufruct in decedent's share of the community property. La. Civ. Code Ann. art. 916 (West Supp. 1976). Here, the decedent's son, William Alan Bergman, was declared her sole heir, but since decedent died owning only community property, all of the property passing to her son was subject to a usufruct in favor of petitioner.

To be sure, as respondent contends, the usufruct is a valuable right, and indeed the parties have stipulated that the value of the usufruct in this case at the date of decedent's death was $35,351.27. But it is plain under Louisiana law that the creditors of the decedent's estate have no personal action against the usufructuary (the holder of the usufruct). This is clearly set forth in La. Civ. Code Ann. art. 583 (West 1952), which provides:

Art. 583. The universal usufructuary, or usufructuary under an universal title, whose usufruct has been constituted by an act or [of] last will, is not directly bound for the debts of the testator, that is to say, the creditors of the succession have no action against him to force him to discharge the debts out of his own estate, saving their rights to cause to be seized the effects of the succession, and to proceed against the heir of the testator to obtain payment.[8]

Thus, under these provisions, the creditors may enforce their rights only by proceeding against the heirs or causing the effects of the estate to be seized.[9] The petitioner herein is not decedent's heir, and moreover, as a result of his remarriage on July 11, 1972, his usufruct terminated on that date, long before the issuance of the statutory notice herein on February 3, 1975. Accordingly, the Government's rights as a creditor against petitioner as a transferee—to the limited extent of a remedy in the nature of an in

---

[8] Although the language in art. 583 and its companion provisions, which set forth the rules governing usufructs, mentions only testamentary usufructs, it has long been held that those provisions govern the statutory usufruct of the surviving spouse as well. *Long v. Dickerson,* 127 La. 341, 346, 53 So. 598, 599; *Succession of Fitzwilliams,* 3 La. Ann. 489, 490.

[9] Apparently, the heir may not be materially disadvantaged by this statutory arrangement. If the usufructuary will not advance, without interest, the funds necessary to discharge the decedent's debts, the heirs may either make the advance, for which the usufructuary must allow him interest, or may sell a sufficient portion of the property subject to the usufruct. La. Civ. Code Ann. arts. 584 and 585 (West 1952).

rem action under Louisiana law—terminated in 1972. Petitioner was never liable personally under Louisiana law which, of course, is controlling (see p. 892, *supra*), and since there is no other basis for proceeding against petitioner, we must hold that he is not liable as a transferee for the decedent's estate tax.

In view of our conclusion that petitioner is not liable as a transferee, we do not reach the third issue (relating to the pension plan contributions) which pertains solely to the amount of the deficiency.

*Decision will be entered for the petitioner.*