## ANDERSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 204, Docket 20098.

Circuit Court of Appeals, Second Circuit.

July 15, 1946.

J. F. Collins and Nelson Gammans, both of New York City, for petitioner.

Sewall Key, of Washington, D.C. (Helen R. Carloss and Hilbert P. Zarky, both of Washington, D.C., of counsel), for respondent.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The findings, legal conclusions and opinion of the Tax Court are reported in 5 T.C. 482. The evidence sufficiently supports the findings. We agree with that court's interpretation of the partnership agreement in the light of the findings. It follows that the decision was correct, i.e., that when the debt from King became worthless, it

was not owing to taxpayer. He, or the Anderson estate, had a claim against the members of the new partnership. It is immaterial that, through a mistaken notion of their legal rights, he and the estate may have relinquished their claims against those members; we do not, of course, decide that there was such a release.

Taxpayer complains that the case was not tried on the theory on which it was decided, that theory having been first advanced by the Commissioner in his brief filed in the Tax Court after all the evidence had been received. The Commissioner, in his brief filed in this court, virtually concedes as much, but states: "The taxpayer's reply brief before the Tax Court, while objecting to the new theory of the case relied on by the Commissioner, did not claim that any new evidence was necessary and did not request that an opportunity be given to refute the Commissioner's contentions by further testimony. No petition for rehearing was filed." No part of this statement was denied by taxpayer in its briefs or oral argument in this court. Accordingly, we see no ground for holding that taxpayer was not accorded a fair hearing or for remanding the case for the reception of further evidence.

Affirmed.

SWAN Circuit Judge (concurring).

This appeal involves the petitioner's income tax for the calendar year 1941. The deficiency in dispute resulted from the disallowance by the commissioner of a worthless debt deduction claimed by the taxpayer. For an understanding of the questions presented a summary of the facts as found by the Tax Court is required.

The taxpayer's father, C. Edgar Anderson, was a member of the stock brokerage firm of Chauncey & Co. at the time of his death on October 1, 1939. The value of the father's interest in the partnership at the date of its dissolution by his death, computed in accordance with the partnership agreement, was $249,811.57, and this valuation was reported in the estate tax return of his estate. In making the compution a debt of some $70,000 owed to the partnership by Edward G. King, one

of the surviving partners, was taken in at its face value, and the share thereof of the father's estate was $34,977.50. King became insolvent in 1941 and the indebtedness owing by him thereby became worthless. The father's will bequeathed his property, including his interest in the partnership dissolved by his death, to his three children. Under the father's will and the will of the taxpayer's brother, who died testate on March 30, 1940, the taxpayer became entitled to two-thirds of the father's partnership interest. In the taxpayer's income tax return for the year 1941 he claimed a deduction of $23,518.53 (being two-thirds of $34,977.50, the share of the father's estate in the King indebtedness) as a worthless debt. The commissioner disallowed the deduction on the ground that the taxpayer had "failed to show that there existed as at December 31, 1940 any value to the item claimed nor have you shown any acceptable identifiable event occurring in the year 1941 to sustain your claim to this deduction." Thereupon the taxpayer brought the present proceeding in the Tax Court. In the opening statement to the Tax Court by counsel for the commissioner counsel stated:

"I think there can be no serious contention [but] that this claim against King became worthless. However, there is considerable question as to when it was determined to be worthless. That is, whether its worthlessness was discovered and determined in the year 1940, at which time the evidence will develop that King resigned as a member of the firm of Chauncey & Company, or whether its worthlessness was established in the year 1941, at which time King was expelled as a member of the New York Stock Exchange.

"However, in our consideration of the case, the actual time that it became worthless is not so important as the question as to whether this was a claim which properly belonged to the estate and would therefore result in a diminution in the value of the entire estate or whether it was a claim or an asset of the individual beneficiaries under the will of the decedent."

Thus the taxpayer went to trial in the well justified belief that the issues to be

litigated were (1) whether or not the King debt became worthless in 1941, and (2) whether or not administration of his father's estate had proceeded to the point of distributing the assets of the estate (including this debt) to the legatees under the father's will. On both these issues the Tax Court found the facts in favor of the taxpayer. It decided against him on a theory which neither the pleadings nor the opening statement of counsel had suggested; namely, that the evidence showed that after the old firm of Chauncey & Co. was dissolved by the death of the taxpayer's father, the surviving partners formed a new firm by the same name which took over the assets of the dissolved firm including the debt owed by King, as the original partnership agreement authorized them to do; that thereby the father's estate became a creditor of the new firm for the amount of the value of the father's interest in the dissolved firm, namely, $249,811.57; that the new firm had paid the estate about $200,000 of its indebtedness before King became insolvent, and that there was no proof that the worthlessness of King's debt caused the new firm to become insolvent or unable to pay the balance of its indebtedness to the estate or, after its distribution, to the legatees under the father's will.

The partnership agreement provided that "upon the retirement, death or insanity of a General Partner the business may be continued by the remaining General Partners with the consent of all the members." Despite the taxpayer's argument to the contrary, I agree that the record supports the conclusions of the Tax Court and of my brothers that the surviving partners did continue the business, with the result that in 1941 King was not indebted to the taxpayer or to his father's estate but to the new firm, and that the only claim of the taxpayer based on the King debt was against the new firm of Chauncey & Co. See New York Partnership Law, Sec. 73; M. & C. Creditors Corp. v. Pratt, 172 Misc. 695, 708, 17 N.Y. S.2d 240; affirmed, 255 App.Div. 838, 7 N.Y.S.2d 662, appeal denied, 255 App.Div. 962, 8 N.Y.S.2d 990, affirmed, 281 N.Y. 804, 24 N.E.2d 482. Therefore King's insolvency did not destroy the value of any debt owing by King to the taxpayer. However, if it rendered the new firm of Chauncey & Co. unable to pay its debt to the taxpayer, he would be entitled to a deduction of $23,518.53 on his 1941 return. The Tax Court's opinion implicitly so recognizes in stating that "there is no evidence that the new partnership was insolvent or unable to pay such indebtedness."

Since the issue of the effect of King's insolvency on the financial standing of the new partnership was not suggested by the pleadings or counsel's statement of issues before the Tax Court, it would be somewhat harsh to decide against the taxpayer on the ground that he did not prove that the new firm was unable to pay its debt to him, unless he should be held properly forewarned of the need of such proof. As was stated in General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 187, 80 L.Ed. 154:

"Always a taxpayer is entitled to know with fair certainty the basis of the claim against him. Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised."

However, the taxpayer has to carry the burden of proving himself entitled to a worthless debt deduction; that means, he must prove the insolvency of his debtor. If, as the evidence developed, it appeared that the Tax Court might find that King was not his debtor but the new firm was, the taxpayer should have realized that he must prove the latter's insolvency; and failing such proof decision could properly be rendered against him. It is well settled that a decision may be sustained on a new legal theory where "no facts not already of record are required for decision." Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406, 409; Alexander Sprunt & Son v. Commissioner, 4 Cir., 64 F.2d 424, 427; Helvering v. Gowran, 302 U.S. 238, 246, 58 S.Ct. 154, 82 L.Ed. 224. When the new theory was introduced by the commissioner's brief the taxpayer did not ask the Tax Court that the hearing be reopened to permit him to offer evidence of the new firm's insolvency. Nor has he asked us to remand for that purpose; the only new

evidence he now says he would offer if the cause were remanded is evidence to prove that the new firm did not become his debtor. But in such an endeavor he would be bound to fail, as his relation with the new firm is governed by the New York Partnership Law in the absence of controlling provisions in the old firm's articles of partnership. Accordingly I agree that the decision should be affirmed.

CLARK, Circuit Judge, concurs with this concurring opinion.