*Decision will be entered under Rule 155.*

CATERPILLAR TRACTOR CO., A CALIFORNIA CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13616–78R.     Filed September 13, 1979.

*Emory S. Naylor, Jr., Warren C. Seieroe,* and *G. William Porter,* for the petitioner.

*Seymour I. Sherman,* for the respondent.

OPINION

TANNENWALD, *Judge:* Petitioner seeks a declaratory judgment pursuant to section 7476[1] that its noncontributory pension plan, as amended December 17, 1976, qualifies under section 401(a).

The case was submitted under Rule 122, Tax Court Rules of Practice and Procedure, on the basis of the pleadings and the facts set forth in the administrative record.

Petitioner is a corporation with its principal office in Peoria, Ill., at the time of filing the petition herein. At all pertinent times, its business has included the manufacture and sale of earth moving and industrial equipment.

---

[1]All references are to the Internal Revenue Code of 1954, as amended, and applicable to the issue herein.

Some time prior to 1976, petitioner adopted a retirement plan known as the Caterpillar Tractor Co. Non-Contributory Pension Plan (the plan). Prior to the enactment of the Employees Retirement Income Security Act (hereinafter ERISA), the plan, as originally adopted and as amended November 21, 1973, was determined by respondent to meet the requirements of section 401(a), I.R.C. 1954.

On December 17, 1976, petitioner entered into an agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and certain of its affiliated local unions, amending the plan as of October 1, 1976. The plan (as so amended) included provisions which had the following effect:

(a) "Normal Retirement Age" was defined as age 65.

(b) Mandatory retirement was set at age 66.

(c) The "normal retirement benefit" of a participant was defined as that amount payable to him under the specified formula, if he possessed at least 10 years of credited service upon retirement.

As a result of the foregoing provisions, employees with less than 10 years of credited service at the time they reach mandatory retirement age (age 66) are not entitled and can never become entitled to receive any retirement benefits under the plan. A new employee who is past his 56th birthday at the time first employed can never enjoy any retirement benefits.

By letters dated March 8, 1977, and August 1, 1977, petitioner requested a determination that the plan met the requirements of section 401(a), and that the trusts administering such plans were exempt under the provisions of section 501(a). Under date of November 1, 1977, the Office of the District Director at St. Louis, Mo., advised petitioner by letter that, on the basis of the information supplied, that office had made a favorable determination with respect to such application.

In February of 1978, the foregoing Office of the District Director received a communication from the Department of Labor and copies of correspondence with respect to the status under the plan of certain employees or former employees of petitioner and one employee in particular. As a result of this communication, that office sought technical advice from the national office of the Internal Revenue Service as to whether the plan met the requirements of sections 410 and 411.

A letter of technical advice was issued in response to such request, concluding that the plan failed to meet the requirements of section 411(a). Petitioner was advised by the Office of the District Director, St. Louis, Mo., that unless it retroactively amended the plan so as to delete the requirement of 10 years of credited service at mandatory retirement age, a final adverse determination letter would be issued. Petitioner declined to so amend the plan.

A "Final Adverse Determination Letter" was issued to petitioner on or about October 27, 1978, reading, insofar as pertinent herein, as follows:

This is a FINAL ADVERSE DETERMINATION LETTER indicating our conclusion that the plan identified above does not meet the requirements of section 401 of the Internal Revenue Code for plan years beginning on or after October 1, 1976. This adverse determination is being made pursuant to technical advice of the National Office of the Internal Revenue Service and supercedes [sic] our determination letter dated November 1, 1977. * * *

The primary dispute between the parties focuses on the proper interpretation to be accorded section 411(a),[2] the requirements of which must be met in order for the plan to qualify under section 401(a) (see par. (7) thereof). Involved in the question of interpretation is the impact of sections 401(a)(14) (relating to payment of benefits)[3] and 410(a)(2) (relating to participation

[2]That subsection provides in pertinent part:

SEC. 411(a). GENERAL RULE.—A trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age (as defined in paragraph (8)) and in addition satisfies the requirements of paragraphs (1) and (2) of this subsection and the requirements of paragraph (2) of subsection (b), and in the case of a defined benefit plan, also satisfies the requirements of paragraph (1) of subsection (b).

(1) EMPLOYEE CONTRIBUTIONS.—A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.

(2) EMPLOYER CONTRIBUTIONS.—A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).

(A) 10-YEAR VESTING.—A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

[3]Par. (14) of sec. 401(a) provides in pertinent part:

(14) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that, unless the participant otherwise elects, the payment of benefits under the plan to the participant will begin not later than the 60th day after the latest of the close of the plan year in which—

(A) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

requirements).[4]

The parties are in agreement that, with one exception, the plan satisfies the minimum vesting standards of section 411 and, therefore, the requirements of section 401(a)(7). That exception relates to the meaning to be accorded the clause in the first sentence of section 411(a) that, in order to qualify, the plan of which the trust is a part must provide "that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age (as defined in paragraph (8))." See n. 2 *supra*. The factual predicate of the dispute over the applicability of this language is that, since there is no maximum age for hiring specified in the plan, an employee who is over 56 when he is hired will not have satisfied the 10-year service requirement by the time he reaches the mandatory retirement age of 66 and therefore will not be entitled to any benefits under the plan.[5]

Petitioner contends that the plan meets the requirements of the above-quoted clause in section 411(a), because the plan does not involve any forfeiture of a "normal retirement benefit." Petitioner argues that the plan simply provides that such benefit for a participant having less than 10 years of service is zero and that such a provision is permitted under section 411(a). Petitioner supports its argument with a semantical analysis of the various provisions involved and charges that respondent's position that petitioner's contention makes a mockery of the above-quoted clause is based upon a confusion in his understanding of the terms "accrual," "vesting," and "participation." For the reasons hereinafter set forth, we reject petitioner's contentions

(B) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(C) the participant terminates his service with the employer.

[4]Par. (2) of sec. 410(a) provides in pertinent part:

(2) MAXIMUM AGE CONDITIONS.—A trust shall not constitute a qualified trust under section 401(a) if the plan of which it is a part excludes from participation (on the basis of age) employees who have attained a specified age, unless—

(A) the plan is a—

(i) defined benefit plan, or

(ii) target benefit plan (as defined under regulations prescribed by the Secretary), and

(B) such employees begin employment with the employer after they have attained a specified age which is not more than 5 years before the normal retirement age under the plan.

[5]By virtue of the 1978 amendments to the Age Discrimination in Employment Act (Pub. L. 95–256, 92 Stat. 189) the plan must be amended effective Oct. 1, 1979, to increase the mandatory retirement age to 70. The impact of such an amendment, which insofar as the record reveals has not been made, is not before us.

and agree with the respondent that the plan does not meet the vesting standards of section 411(a).

We see no need to delve deeply into the tortuous history of the legislative path of ERISA from the time of its initial consideration by the Congress to its final enactment. We think, however, that two elements of that history are worthy of note. The first is that neither the House nor the Senate versions, as passed by those legislative bodies respectively, contained the above-quoted clause in their counterpart of section 411(a); each version simply set forth the specific conditions, albeit with variations, which found their way into section 411(a) in its final form. See H.R. 2, 93d Cong., 2d Sess. sec. 1012, as passed by the House of Representatives on February 28, 1974, and section 221, as passed by the Senate on March 4, 1974. The second element is that the Conference Committee, which was charged with compromising the House and Senate versions, struck both versions and came up with its own substitute version which, at least to the extent that section 411(a) as applied to the situation herein is concerned, was enacted into law. H. Rept. 93–1280 (Conf. Rept.) 249 (1974), 1974–3 C.B. 415. The above-quoted clause, i.e., "that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age" appeared for the first time in the Conference Committee version. The Joint Explanatory Statement in the Conference Committee report contains the following language dealing with vesting standards, which directly supports respondent's reading of the clause in question (see H. Rept. 93–1280, *supra* at 268, 1974–3 C.B. at 429): "In addition, all plans would have to meet the requirement of present law that an *employee must be 100 percent vested in his accrued benefit when he attains the normal or stated retirement age* (or actually retires)." (Emphasis added.)

Petitioner makes much of the fact that preexisting administrative practice indicated that vesting at retirement could be coupled with reasonable service requirements. Thus, Rev. Rul. 69–421, 1969–2 C.B. 59, 75, which appears to be the last in a long line of revenue rulings (see, e.g., Rev. Rul. 57–163, 1957–1 C.B. 128, 147) setting forth a host of requirements for qualification of pension, etc., plans states:

(2) *Vesting on Retirement.*—A plan will not be held to qualify if it fails to provide that an employee who has reached the normal retirement age (in the case of a pension or annuity plan) or the stated age or other specified event has

transpired (in the case of a profit-sharing or stock bonus plan) *and has satisfied any reasonable and uniformly applicable requirements as to length of service or participation,* is vested in the contributions made or benefits payable under the plan. See Rev. Rul. 66–11, C.B. 1966–1, 71, and Rev. Rul. 68–302. [Emphasis added.]

But, whatever the import of the foregoing provision of Rev. Rul. 69–421 may be in terms of a possible misunderstanding by the Congress as to what the "present law" was,[6] it can provide no solace to petitioner in the face of the clear language of the Joint Explanatory Statement by the Conference Committee that the accrued benefits of employees are to be vested at normal retirement age. See p. 1092 *supra.*

A reading of the various committee reports reveals that one of the primary thrusts of ERISA was to staunch the flow of lost pension rights because of the service requirements when a person's employment was severed prior to reaching retirement age. See H. Rept. 93–779, *supra* at 15, 52, 1974–3 C.B. at 258, 295; S. Rept. 93–383, *supra* at 4890; see n. 6 below; *Guest v. Commissioner,* 72 T.C. 768, 772 (1979). Under these circumstances, it would be totally unjustified for us to sanction such deprivation of benefits for older employees who had failed to fulfill a rather lengthy service requirement. To be sure, such a service requirement is permitted by section 411(a)(2)(A), but it is clear to us that this requirement was directed at vesting of benefits *prior to retirement* and was not intended to undermine what we consider to be the clear import of the previously quoted language of the first sentence of section 411(a). See p. 1091 *supra.*

We are aware of the fact that Congress was concerned that unduly liberal vesting standards might of itself produce the undesirable consequence of discouraging the hiring of older

---

[6]Both the House and the Senate had similar views as to the situation existing at the time ERISA was enacted. Thus, both reports state: "Plans which qualify under the Internal Revenue Code are now required to provide vested (i.e., nonforfeitable) rights to participating employees when they attain normal or stated retirement age." See H. Rept. 93–779 (1974), 1974–3 C.B. 244, 294–295, to accompany H.R. 12481, intended to be combined with H.R. 2 (see H. Rept. 93–779, *supra* at 1, 1974–3 C.B. at 244); S. Rept. 93–383 (1974), U.S. Code Cong. & Adm. News 4890, 4929, 93d Cong., 2d Sess. (1974). In connection with the foregoing and the quotation in the body of this opinion, the following language from Rev. Rul. 69–421, 1969–2 C.B. at 75, should be noted:

(c) VESTED RIGHTS.—Various provisions are in use, ranging from complete and immediate vesting through different forms of graduated vesting (upon completion of stated service or participation requirements and/or reaching a specified age) to no vesting until attainment of normal or stated retirement age. *Full vesting of an employee's interest is then required.* * * * [Emphasis added.]

(mature) persons. See, e.g., H. Rept. 93–779, *supra* at 12, 18, 1974–3 C.B. at 255, 261; see n. 6 below. But this problem was dealt with specifically and directly in two ways: (a) through the provision of section 410(a)(2)(B) permitting the exclusion from participation of employees who are within 5 years or less of normal retirement age when hired; and (b) through the provision of section 401(a)(14) allowing an otherwise qualified trust to defer payment until the 60th day after the later of age 65 normal retirement age, or the 10th anniversary of the year that participation in the plan commenced. See nn. 3 & 4 *supra*.

We hold that, because new participants in the plan who are over 56 years of age will not be eligible to receive any benefits upon reaching mandatory retirement age, the plan does not meet the requirements of section 411(a) and, therefore, the trusts are not qualified trusts under section 401(a).

In view of our conclusion, we need not decide respondent's alternative argument, raised for the first time on brief, that the plan (and, therefore, the trusts) does not meet the maximum age conditions of section 410(a)(2) (and is, therefore, likewise disqualified under section 401(a)) because employees with more than 5, but less than 10, years of service will never receive any benefits and are, therefore, excluded from participation. We note, however, that even though respondent has not raised the issue by a proper pleading and indeed appears to have conceded the issue in his answer[7] (which he has not moved to amend), we would not necessarily thereby be precluded from considering what is a pure issue of law. In such a situation, we need not give effect to what is, in essence, a stipulation embodying an erroneous conclusion of law and this is true even where, as is the case herein, the issue is raised for the first time on brief. See *Anderson v. Commissioner*, 156 F.2d 591 (2d Cir. 1946), affg. 5 T.C. 482 (1945); *Redding v. Commissioner*, 71 T.C. 597, 605 (1979); *Estate of Saia v. Commissioner*, 61 T.C. 515, 519–520 (1974).

*An appropriate decision will be entered.*

---

[7] Par. 8(g) of the answer admitted, solely for the purposes of this case, the allegation in the petition that, aside from the effect of sec. 411(a) which was the basis of respondent's adverse determination, "In all other respects the NCP Plan met the requirements of Sec. 401 of the Code."