BOARD OF TRUSTEES OF NEW YORK HOTEL TRADES COUNCIL & HOTEL ASSOCIATION OF NEW YORK CITY, INC. PENSION FUND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Board of Trustees v. Commissioner
Docket No. 13532-80R.
United States Tax Court
T.C. Memo 1981-597; 1981 Tax Ct. Memo LEXIS 146; 42 T.C.M. (CCH) 1430; T.C.M. (RIA) 81597; 2 Employee Benefits Cas. (BNA) 2097; October 15, 1981. Robert M. Schanzer, for the petitioner. Gerald A. Thorpe, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Petitioner has requested a *148 declaratory judgment pursuant to section 7476 [1] as to whether the pension plan and trust which it administers qualifies under section 401. Respondent issued a final adverse determination letter on April 16, 1980, which stated that the plan, as amended on December 19, 1977, did not qualify because it failed to provide for full vesting of a participant's accrued benefit upon the attainment of normal retirement age as required by section 411(a). This case was submitted on the basis of a stipulated administrative record pursuant to Rule 217(b)(1), Tax Court Rules of Practice and Procedure. The administrative record is incorporated herein by reference. The relevant facts are summarized below. Petitioner is the *149 administrator and trustee for the New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund (the Plan). At the time of the filing of the petition in this case petitioner's business address was located in New York City, New York. The Hotel Association of New York City, Inc. (Association) is a trade association of various hotels and restaurants located in the New York City area. The New York Hotel and Motel Trades Council, AFL-CIO (Union) is comprised of a number of local unions which represent workers employed in the hotel and restaurant business in the New York City area. The Plan was established on or about December 17, 1952, pursuant to a collective bargaining agreement between the Association and the Union. On December 19, 1977, the Plan was amended in order to comply with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). The amended Plan was effective January 1, 1976. The pertinent provisions of the revised Plan may be summarized as follows. With a few exceptions not relevant here, employees become eligible to participate in the Plan after working at least 1,000 hours in covered employment during a period of *150 12 consecutive months. A participant who retires after January 1, 1976, is required to have at least 10 years of "vesting service" before he is entitled to retirement benefits. Generally speaking, a participant is credited with one year of vesting service for each "pension credit" earned. For calendar year 1976 and thereafter, an employee generally accrues pension credits according to the number of hours of service in covered employment he has worked during the year. For example, all employees other than banquet waiters and checkroom and washroom attendants accrue pension credits according to the following schedule: Hours of Service
Pension Credits
1,000 hours or more
1
750 but less than 1,000 hours
3/4
500 but less than 750 hours
1/2
Under the Plan's benefit formula a retiring participant's monthly pension benefit is computed by multiplying a specified dollar amount by the participant's accrued pension credits (up to a maximum of 25 credits). The Plan defines the "normal retirement age" as the later of age 65 or the age of the participant on the tenth anniversary of his participation in the Plan. The Plan further provides that an employee may be required *151 to retire upon reaching age 70 if his employer deems him to be physically unfit for work. Another provision states in part that "[t]he benefits to which a Participant is entitled under this Plan upon his attainment of Normal Retirement Age are nonforfeitable." On December 28, 1977, petitioner submitted to respondent an Application for Determination for Collectively-Bargained Plan (Form 5303) requesting a determination as to whether the Plan and the related trust qualified under section 401. Respondent issued a proposed adverse determination letter on September 21, 1978, which stated that the Plan and trust did not qualify because the Plan failed to provide for full vesting of a participant's accrued benefit upon attainment of normal retirement age as required by section 411(a). Petitioner's appeals were unsuccessful and a final adverse determination letter was issued on April 16, 1980. Section 401(a)(7) states that a qualified plan must satisfy the requirements of section 411, which sets forth various rules governing the vesting and accrual of plan benefits. Under section 411(a) [2] a plan will not qualify unless it provides that "an employee's right to his normal retirement *152 benefit is nonforfeitable upon the attainment of normal retirement age (as defined in paragraph (8))." The term "normal retirement benefit" is defined in section 411(a)(9) as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." The "normal retirement age" is defined in section 411(a)(8) as the earlier of (1) the age specified as such in the plan, or (2) the later of age 65 or the employee's age on the tenth anniversary of his participation in the plan. The normal retirement age defined in the plan corresponds with the latter half of this definition. *153 In an apparent attempt to comply with the nonforfeitability requirement contained in the flush language of section 411(a), the Plan states that the benefits to which a participant is entitled under the Plan upon reaching normal retirement age are nonforfeitable. However, the Plan also states that a participant will not be eligible for any retirement benefits unless he has completed at least 10 years of vesting service. Petitioner concedes on brief that the latter provision has the effect of denying a participant who reaches normal retirement age with less than 10 years of vesting service the right to vested benefits. Yet, petitioner contends that this does not violate section 411(a) because that provision only requires that the benefit to which the participant is entitled under the plan become nonforfeitable upon reaching normal retirement age. In other words, under petitioner's construction of the statute a person who reaches normal retirement age without having accumulated 10 years of vesting service is not entitled to a pension benefit, and therefore his normal retirement benefit under the Plan is zero. Thus, petitioner argues, the person has no benefits which are required *154 to be nonforfeitable under section 411(a). Respondent, on the other hand, contends that the reference to "normal retirement benefit" in the section 411(a) flush language is intended to refer to the participant's accruedbenefit (in this case, the participant's accumulated pension credits), rather than the vested benefits to which the participant would otherwise be entitled to under the Plan's 10-year vesting schedule.[3] Respondent further contends that this precise issue was decided by this Court adversely to the taxpayer in Caterpillar Tractor Co. v. Commissioner, 72 T.C. 1088 (1979). We agree with respondent and hold that Caterpillar Tractor is dispositive of this case. The facts of Caterpillar Tractor may be summarized as follows. The retirement plan at issue provided that the normal retirement age was 65, with mandatory retirement set at age 66. The normal retirement benefit of a participant was defined to be the amount payable to him under the plan's benefit formula, provided he had completed at least 10 years of credited service *155 upon retirement. Because of these provisions, employees with less than 10 years of credited service upon reaching the mandatory retirement age would never receive any retirement benefits. As in the present case, the central issue was whether the plan met the requirements of section 411(a). The taxpayer contended (as does the petitioner herein) that the normal retirement benefit of a participant who had attained normal retirement age with less than 10 years of credited service was zero, and therefore the participant had no normal retirement benefit which was required to be nonforfeitable under section 411(a).The Commissioner countered by arguing that the reference to "normal retirement benefit" in that provision is intended to refer to the participant's accrued benefit under the Plan, and that that amount was required to be nonforfeitable upon reaching normal retirement age. We observed that the Commissioner's interpretation was supported by the following statement taken from the Joint Explanatory Statement in the Conference Committee report accompanying the ERISA legislation (Conf. Rept. No. 93-1280 (1974), 1974-3 C.B. 415, 429): "In addition, all plans would *156 have to meet the requirement of present law that an employee must be 100 percent vested in his accrued benefit when he attains the normal or stated retirement age (or actually retires)." (Emphasis added.) With respect to the taxpayer's argument that Congress had misinterpreted the status of "present law" as embodied in a series of Revenue Rulings (in particular Revenue Ruling 69-421, 1969-2 C.B. 59), we stated as follows (72 T.C. at 1093): But, whatever the import of the foregoing provision of Rev. Rul. 69-421 may be in terms of a possible misunderstanding by the Congress as to what the "present law" was, it can provide no solace to petitioner in the face of the clear language of the Joint Explanatory Statement by the Conference Committee that the accrued benefits of employees are to be vested at normal retirement age. [Fn. ref. omitted.] We further noted that this construction of the first sentence of section 411(a) was in accord with the overall objectives of ERISA (72 T.C. at 1093-1094): A reading of the various committee reports reveals that one of the primary thrusts of ERISA was to staunch the flow of lost pension *157 rights because of the service requirements when a person's employment was severed prior to reaching retirement age. * * * Under these circumstances, it would be totally unjustified for us to sanction such deprivation of benefits for older employees who had failed to fulfill a rather lengthy service requirement. To be sure, such a service requirement is permitted by section 411(a)(2)(A), but it is clear to us that this requirement was directed at vesting of benefits prior to retirement and was not intended to undermine what we consider to be the clear import of the previously quoted language of the first sentence of section 411(a). * * * We are aware of the fact that Congress was concerned that unduly liberal vesting standards might of itself produce the undesirable consequence of discouraging the hiring of older (mature) persons. * * * But this problem was dealt with specifically and directly in two ways: (a) through the provision of section 410(a)(2)(B) permitting the exclusion from participation of employees who are within 5 years or less of normal retirement age when hired; and (b) through the provision of section 401(a)(14) allowing an otherwise qualified trust to defer *158 payment until the 60th day after the later of age 65 normal retirement age, or the 10th anniversary of the year that participation in the plan commenced. * * * [Citations and fn. ref. omitted.] On brief petitioner virtually ignores our opinion in Caterpillar Tractor and offers no satisfactory basis for either distinguishing or overruling it. Our own comparison of the two cases reveals two factual differences, neither of which we consider significant. First, the Plan defines normal retirement age as the later of age 65 or the age of the employee on the tenth anniversary of his participation, whereas in Caterpillar Tractor the normal retirement age was stated to be 65. While on the surface the inclusion of the 10-year participation rule in the definition of normal retirement age might seem to render moot the question of nonforfeitability of benefits upon reaching such age (since the Plan requires 100 percent vesting after completing 10 years of vesting service), it must be remembered that a year of participation is not necessarily equivalent to a year of vesting service. For example, under the Plan an employee is credited with a year of vesting service for each pension *159 credit earned. If an employee works less than 1,000 hours of service in a particular calendar year, he will earn only a fractional pension credit for that year. However, assuming he works at least 500 hours during such period he will still be considered a participant, and that year will count in determining whether he has reached the tenth anniversary of his Plan participation. Thus, it is entirely possible for a participant to reach his normal retirement age without having completed 10 years of vesting service. [4]
Second, the Plan provides a qualified mandatory retirement age of 70 (provided the employee is determined to be physically unfit for work), in contrast to the Caterpillar Tractor plan which specified an unqualified mandatory retirement age of 66. Again, we think this difference has no effect on our decision in the present case. *160 To begin with, we do not think that the presence of a mandatory retirement age was critical to the outcome in Caterpillar Tractor, although it did serve to illustrate the inequities which could arise under the taxpayer's construction of the disputed statutory language, since an employee hired within 10 years of the mandatory retirement age would never become entitled to any retirement benefits even though he would attain normal retirement age (65) before being forced to retire. Furthermore, it is clear that a comparable situation could also arise under the Plan. Section 1.411(a)-7(b)(1), Income Tax Regs., states that the normal retirement age cannot exceed the Plan's mandatory retirement age if one is specified. Thus, under the Plan an employee who is past age 60 when he is hired will never receive pension benefits if he is forced to retire at age 70, even though he will have attained normal retirement age within the intendment of the regulations. In these circumstances we see no reason to depart from our views in Caterpillar Tractor. Accordingly, we hold that the Plan and related trust do not qualify under section 401 because the Plan fails to provide for vesting of *161 a participant's accrued benefit upon reaching normal retirement age, as required by section 411(a). To reflect our conclusion herein, An appropriate decision will be entered. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, unless otherwise indicated. In its petition the petitioner alleged that it had complied with the notice requirements of section 7476(b)(2) and exhausted all administrative remedies as required by section 7476(b)(3). Respondent has not contested these allegations and we conclude that the jurisdictional prerequisites have been satisfied.↩
2. Section 411(a) provides in pertinent part: (a) General Rule.--A trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age (as defined in paragraph (8)) and in addition satisfies the requirements of paragraphs (1) and (2) of this subsection and the requirements of paragraph (2) of subsection (b), and in the case of a defined benefit plan, also satisfies the requirements of paragraph (1) of subsection (b). (1) Employee contributions.--A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
(2) Employer contributions.--A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C). (A) 10-year vesting.--A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions. (8) Normal retirement age.--For purposes of this section, the term "normal retirement age" means the earlier of-- (A) the time a plan participant attains normal retirement age under the plan, or (B) the later of-- (i) the time a plan participant attains age 65, or (ii) the 10th anniversary of the time a plan participant commenced participation in the plan. (9) Normal retirement benefit.--For purposes of this section, the term "normal retirement benefit" means the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age. * * *↩
3. The Plan uses the 10-year vesting schedule authorized in section 411(a)(2)(A). See note 2, supra↩.
4. We can envisage a variety of other situations where a participant might reach his tenth anniversary of participation without having accumulated 10 years of vesting service, particularly through the operation of the Plan's break-in-service rules, but we think it unnecessary to go into a detailed explanation of these possibilities.↩